IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

KIRK MENARD,

Plaintiff-Appellee

*v.*

TARGA RESOURCES LLC,

Defendant-Appellant

On Appeal from the United States District Court for the Middle District of Louisiana
No. 3:19-cv-00050-BAJ-SDJ, Hon. Brian A. Jackson, Judge Presiding

**BRIEF OF APPELLANT
TARGA RESOURCES LLC**

SUBMITTED BY:

DANIEL PATTON
Federal Bar No. 26200
dpatton@scottpattonlaw.com
SCOTT PATTON PC
5301 Katy Freeway, Suite 201
Houston, Texas 77007
Telephone:   (281) 377-3266
Facsimile:    (281) 377-3267

ATTORNEYS FOR APPELLANT
TARGA RESOURCES LLC

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case.

| Plaintiff/Appellee | Counsel for Plaintiff/Appellee |
|---|---|
| Kirk Menard | Eulis Simien, Jr.<br>Federal Bar No. 12077<br>eulissimien@simien.com<br>Roy L. Bergeron, Jr.<br>Federal Bar No. 33726<br>roybergeron@simien.com<br>Simien & Simien, L.L.C.<br>Attorneys and Counselors At Law<br>7908 Wrenwood Boulevard<br>Baton Rouge, Louisiana 70809<br>Telephone: (225) 932-9221 |
| **Defendant/Appellant** | **Counsel for Defendant/Appellant** |
| Targa Resources LLC | Daniel Patton<br>Federal Bar No. 26200<br>dpatton@scottpattonlaw.com<br>Scott Patton PC<br>5301 Katy Freeway, Suite 201<br>Houston, Texas 77007<br>Telephone: (281) 377-3266<br>Kyle A. Ferachi<br>Federal Bar No. 27458<br>kferachi@hinshawlaw.com<br>Hinshaw & Culbertson, LLP<br>400 Convention Street, Suite 1001<br>Baton Rouge, Louisiana 70802<br>Telephone:  (225) 222-3250 |

*/s/ Daniel Patton*
Daniel Patton

1

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Targa Resources LLC ("Targa") believes that oral argument would aid the Court in resolving the legal issues in this appeal in light of the complexity of the issues and therefore respectfully requests oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................................1

STATEMENT REGARDING ORAL ARGUMENT .............................................2

TABLE OF CONTENTS .............................................................................................3

TABLE OF AUTHORITIES .......................................................................................4

STATEMENT OF JURISDICTION ...........................................................................7

STATEMENT OF THE ISSUES .................................................................................8

STATEMENT OF THE CASE .....................................................................................9

    I.    PROCEDURAL HISTORY ....................................................................9
    II.   STATEMENT OF THE FACTS ..........................................................11

STANDARDS OF REVIEW......................................................................................23

    I.    STANDARD OF REVIEW FOR DENIAL OF SUMMARY JUDGMENT ...............23
    II.   STANDARD OF REVIEW FOR BENCH TRIAL .......................................23

SUMMARY OF THE ARGUMENT........................................................................24

ARGUMENT & AUTHORITIES..............................................................................31

    I.    THE DISTRICT COURT ERRED WHEN IT DETERMINED APPELLEE'S REFUSAL TO PARTICIPATE IN DILUTING THE SEWAGE SAMPLES WAS A PROTECTED ACTIVITY UNDER LEWS ....................................................................................31
    II.   THE DISTRICT COURT WAS CLEARLY ERRONEOUS IN CONCLUDING THAT APPELLEE'S ALLEGED PROTECTED ACTIVITY WAS THE BUT-FOR CAUSE OF HIS TERMINATION ........................................................................................38
    III.  THE DISTRICT COURT WAS CLEARLY ERRONEOUS IN CONCLUDING A CAUSAL LINK EXISTED BETWEEN APPELLEE'S ALLEGED PROTECTED ACTIVITY AND HIS ADVERSE EMPLOYMENT ACTION UNDER LEWS ....................................48

CONCLUSION............................................................................................................50

CERTIFICATE OF SERVICE ..................................................................................51

CERTIFICATE OF COMPLIANCE .......................................................................52

# TABLE OF AUTHORITIES

Cases

*Ade v. KidsPeace Corp.*, 698 F. Supp. 2d 501, 519 (E.D. Pa. 2010), aff'd, 401 Fed. Appx. 697 (3d Cir. 2010) ................................................................................................................................29

*Anderson v. City of Bessemer City. N.C.*, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) ..................................................................................................................................23

*Bardwell v. GlobalSantaFe Drilling Co.*, CIV A H-06-0171, 2007 WL 2446801, at *11 (S.D. Tex. Aug. 23, 2007) ..................................................................................................................... 28, 43

*Becker v. Tidewater, Inc.*, 586 F.3d 358, 365 n.4 (5th Cir. 2009) ..........................................................23

*Black v. J.I. Case Co., Inc.*, 22 F.3d 568, 570 (5th Cir. 1994) ................................................................23

*Blessey Marine Servs., Inc. v. Jeffboat, L.L.C.*, 771 F.3d 894, 897 (5th Cir. 2014) ............................23

*Borcik v. Crosby Tugs, L.L.C.*, 2016-1372 (La. 5/3/17), 222 So. 3d 672, 677 ..................................31

*Bostock v. Clayton Cnty., Georgia*, 140 S.Ct. 1731, 1738 (2020) ........................................................35

*Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 Fed. Appx. 917, 924 (5th Cir. 2009) ........ 28, 43

*Brown v. BASF Corp.*, CIV.A. 02-2316, 2003 WL 133227, at *2 (E.D. La. Jan. 14, 2003) .......33

*Cameron v. Rowland*, 215 La. 177, 232; 40 So.2d 1 (1948) ..................................................................33

*Cervantez v. KMGP Servs. Co.*, 349 Fed. Appx. 4, 10 (5th Cir. 2009) ............................................47

*Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir.1999) ......................38

*Cheramie v. J. Wayne Plaisance, Inc.*, 595 So. 2d 619, 623 (La. 1992) ......................... 24, 31, 32, 37

*Dejoie v. Medley*, 08–2223, P. 6 (La.5/5/09), 9 So. 3d 826, 829. ..........................................................34

*Finley v. Fla. Parish Juvenile Detention Ctr.*, No. 12-726, 2013 WL 4710404, at *8–9 (E.D. La. Aug. 30, 2013) ..................................................................................................................................47

*Foti v. Holliday*, 09–0093, p. 6 (La.10/30/09), 27 So. 3d 813, 817 ....................................................34

*Geddis v. University of Delaware*, 40 F. App'x 650, 653 (3d Cir. 2002) ............................................29

*Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002) ..............................................................................38

*Gen. Elec. Capital Corp. v. Se. Health Care, Inc.*, 950 F.2d 944, 950 (5th Cir. 1991) ....................33

*Golf City, Inc. v. Wilson Sporting Goods, Co.*, 555 F.2d 426, 433–34 (5th Cir.1977) ......................49

*Hardy v. Fed. Exp. Corp.*, No. 97-1620, 1998 WL 419716, at *4 (E.D. La. July 21, 1998) ........47

*Harris v. Chem Carriers Towing*, No. 15-596-SDD-RLB, 2017 WL 4158620, at *5 (M.D. La. Sept. 18, 2017) ..................................................................................................................................46

*Hatfield v. Bio-Medical Life Applications of La., LLC*, No. 16-1307, 2017 WL 4976801, at *6–7 (W.D. La. Oct. 31, 2017) ..............................................................................................................47

*Hays v. Louisiana State Bd. of Elementary & Secondary Educ.*, 2009-1386, p. 8 (La.App. 1 Cir. 6/11/10); 39 So. 3d 818, 823, *writ denied*, 2010-1640 (La. 10/8/10); 46 So. 3d 1272. .........34

*In re Ithaca Corp.*, 582 F.2d 3, 4 (5th Cir.1978) ..................................................................................48

*Johnson v. Delchamps, Inc.*, 897 F.2d 808, 811 (5th Cir. 1990) ........................................................47

*Johnson v. JP Morgan Chase Bank, N.A.*, 293 F. Supp. 3d 600, 614 (W.D. La. 2018) ..................47

*Jones v. Children's Hosp.*, 58 F. Supp. 3d 656, 666 (E.D. La. 2014) ..................................................47

*Jones v. Flagship Intern.*, 793 F.2d 714, 729 (5th Cir. 1986) ..............................................................47

*LeJeune v. Avondale Indus., Inc.*, No. 95-2600, 1996 WL 225029, at *6 (E.D. La. May 1, 1996) 47

*Long v. Eastfield College*, 88 F.3d 300, 306 (5th Cir. 1996) ................................................................47

*M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07–2371, p. 13 (La.7/1/08), 998 So.2d 16, 27 ...... 34, 35

4

*Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir.2003) ...................................................38

*Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ...........................................46

*McCombs v. MS Communications Am., Inc.*, CIV.A.SA00CA0623NN, 2002 WL 1491724, at *7 (W.D. Tex. Apr. 23, 2002) ................................................................................................ 28, 44

*McKinney Hosp Venture*, 235 F.3d 219, 226 (5th Cir. 2000)......................................................25, 39

*Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988) .....................................47

*One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 262 (5th Cir. 2011)...................23

*Peters v. Harrah's New Orleans*, 418 F.Supp.2d 843 (E.D. La. 2006)..............................................41

*Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 489 (5th Cir. 2004)........................................29

*Rada v. Adm'r, Div. of Employment Sec., State Dep't of Labor*, 319 So.2d 460, 463 (La. Ct. App.1975), writ denied, 323 So.2d 128 (La. 1975) .......................................................................................35

*Roberson v. Alltel Information Services*, 373 F.3d 647, 653 (5th Cir. 2004) ...............................25, 39

*S.S. Silberblatt, Inc. v. United States ex rel. Lambert Corp.*, 353 F.2d 545, 549 (5th Cir. 1965).......48

*Singh v. Shoney's Inc.*, No. 94-254, 1994 WL 261834, at *2 (E.D. La. June 3, 1994)..................46

*Strahan v. Waste Mgmt.*, CV H-10-2441, 2011 WL 13124110, at *5 (S.D. Tex. Dec. 27, 2011) ................................................................................................................................................ 28, 43

*Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 806 n.2 (5th Cir. 2007)............................42

*Thibodeaux v. Sun Oil*, 49 So.2d 852 (1950) ................................................................................33

*U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 92 L.Ed. 746, 68 S.Ct. 525, 542 (1948) ...............23

*Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165 (5th Cir. 1993) ................................ 28, 43

*Water Craft Mgmt. LLC v. Mercury Marine*, 457 F.3d 484, 488 (5th Cir. 2006) ...........................23

*Willis v. Cleco Corp.*, No. 09-2103, 2011 WL 4443312, at *12 (W.D. La. Sept. 22, 2011) .. 28, 43

Statutes

28 U.S.C. § 1291 ......................................................................................................................................7

28 U.S.C. § 1332 ......................................................................................................................................9

La. Civ. Code art. 9–13 .................................................................................................................... 33, 34

La. R.S. 30:2027 ...........................................................................................................................passim

LSA–C.C. art. 9 ......................................................................................................................................34

Other Authorities

9C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2579, at 328 (3d ed.2008)...........................................................................................................................................49

TO THE HONORABLE COURT OF APPEALS:

NOW COMES Targa and files this Appellant's Brief and in support thereof would respectfully show this Court the following:

## STATEMENT OF JURISDICTION

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because the District Court entered Final Judgment on Appellee Kirk Menard's ("Appellee") claims on March 31, 2022,[1] and Targa timely filed its Notice of Appeal on April 11, 2022.[2]

---

[1] ROA.6002.

[2] ROA.6006.

## STATEMENT OF THE ISSUES

Targa submits the following statement of the issues presented:

1.      Whether the District Court erred when it determined Appellee's refusal to participate in diluting the sewage samples was a protected activity under the Louisiana Environmental Whistleblower Statute?

2.      Whether the District Court was clearly erroneous in concluding that Appellee's alleged protected activity was the "but-for" cause of his termination?

3.      Whether the District Court was clearly erroneous in concluding a causal link existed between Appellee's alleged protected activity and his adverse employment action under the Louisiana Environmental Whistleblower Statute?

# STATEMENT OF THE CASE

## I.  PROCEDURAL HISTORY

This appeal arises out of a retaliation claim under the Louisiana Environmental Whistleblower Statute ("LEWS").[3]  Appellee alleges that Targa terminated his employment because of his refusal to participate in and his reporting to his supervisor of, Targa's alleged illegal ongoing and proposed future practice of diluting sewage samples to avoid having to report environmental violations to state and federal environmental agencies.[4]

On January 10, 2019, Appellee initiated this action against Targa in Louisiana state court.[5]  Targa removed this matter based on diversity jurisdiction, 28 U.S.C. § 1332, on January 28, 2019.[6]

Targa filed its Rule 12(b)(6) Motion to Dismiss Appellee's Petition for Damages.[7] In response, Appellee filed its First Amending and Superseding Complaint for Damages.[8]  Targa then filed its Rule 12(b)(6) Motion to Dismiss Appellee's First Amending and Superseding Complaint for Damages.[9]  The District Court denied

---

[3]  La. R.S. 30:2027.

[4]  ROA.124.

[5]  ROA.31.

[6]  ROA.23.

[7]  ROA.84.

[8]  ROA.117.

[9]  ROA.154.

Targa's motion.[10]

Targa filed its Motion for Summary Judgment on February 7, 2020.[11] Appellee filed his Memorandum in Response to Defendant's Motion for Summary Judgment on February 28, 2020.[12] On June 17, 2020, the District Court issued its Ruling and Order denying Targa's Motion for Summary Judgment.[13] In its Ruling and Order, the District Court concluded that Appellee's *reporting* of Perry Berthelot's[14] alleged request to dilute sewage samples did <u>not</u> constitute a protected activity under LEWS.[15] However, the District Court also concluded that Appellee's *refusal* to participate in diluting the sewage samples <u>was</u> a protected activity under LEWS.[16] Finally, the District Court denied Targa's Motion for Summary Judgment relying upon the cat's paw theory of liability, which was neither alleged nor argued by Appellee in his Memorandum in Response to Targa's Motion for Summary Judgment or any other pleading.[17]

---

[10] ROA.247.

[11] ROA.2184.

[12] ROA.2782.

[13] ROA.5095.

[14] Mr. Berthelot was the Director of Operations and Special Projects for Targa's Venice, Hattiesburg, Stingray, Barracuda, and Gillis plants. Mr. Berthelot never worked directly with Appellee. ROA.6003 – 6004 [Pg. 160, Line 10 to Pg. 161, Line 1 and Pg. 161, Lines 11-14].

[15] ROA.5009 ("Based on Plaintiff's own testimony, the Court concludes that Plaintiff's reporting of Berthelot's request did not constitute a protected activity because it was part of his normal job responsibilities.") (citations omitted).

[16] ROA.5100 ("In accordance with the Louisiana Supreme Court's guidance, this Court recognizes that a refusal to participate in illegal and environmentally damaging conduct is a protected activity under the LEWS.") (citations omitted).

[17] ROA.5101-5102.

A bench trial commenced before the District Court on April 27, 2021.[18]  On April 28, 2021, Appellee concluded his case.[19]  Targa filed its Motion for Judgment on Partial Findings immediately after the conclusion of Appellee's case.[20]  The District Court stated it was taking Targa's Motion for Judgment on Partial Findings under advisement.[21]  Targa concluded its case on April 28, 2021.[22]

On March 31, 2022, the District Court issued its Ruling and Order finding in favor of Appellee in all respects.[23]  As a part of its Ruling and Order, the District Court also found in favor of Appellee in response to Targa's Motion for Judgment on Partial Findings.[24]

Targa subsequently filed its Notice of Appeal on April 11, 2022.[25]

## II.  STATEMENT OF THE FACTS

Appellee began working as an Environmental, Safety and Health ("ES&H") Specialist at Targa on June 11, 2018.[26]  As an ES&H Specialist, Appellee reported to the ES&H Department and was responsible for identifying violations of environmental and

---

[18]  ROA.6095 [Pg. 6, Lines 15-17].

[19]  ROA.6696 [Pg. 253, Lines 3-6].

[20]  ROA.6696 [Pg. 253, Lines 9-13], and 5834.

[21]  ROA.6697 [Pg. 254, Lines 10-16].

[22]  ROA.6726 [Pg. 283, Lines 8-10].

[23]  ROA.5979.

[24]  ROA.6001.

[25]  ROA.6006.

[26]  ROA.6350 [Pg. 261, Lines 6-16].

safety standards under state and federal law, responsibilities which included reporting someone who asked him to commit a crime.[27]

### (A)   Complaints About Appellee

On October 9, 2018, a Targa employee reported to Ted Keller, Area Manager,[28] that Appellee showed a picture of his wife's hemorrhoids to another Targa employee.[29] In addition, an independent contractor for Targa reported to Mr. Keller that Appellee made a comment about wanting to hook up with his wife.[30]  At the time, Mr. Keller had a reasonable, good faith belief in the employee and independent contractor's complaints about Appellee's conduct.[31]

After learning about this information, Mr. Keller made a report to David Smith, Appellee's Supervisor, and then to Mr. Smith's supervisor, Jarrod Gregg.[32]  Mr. Smith and Mr. Gregg both had a good faith belief in the report Mr. Keller provided regarding Appellee's conduct.[33]

---

[27] ROA.5098-5099.

[28] *See* Operations East LA Organizational Chart at ROA.7138 and Engineering and Operations ES&H Organization Chart at for the  at ROA.7139.

[29] ROA.6147 [Pg. 58, Lines 13-17]; 6216-6218 [Pg. 127, Line 23 to Pg. 129, Line 13]; and 6636 [Pg. 193, Lines 12-16].

[30] ROA.6127 [Pg. 58, Lines 13-17]; and 6216-6218 [Pg. 127, Line 23 to Pg. 129, Line 13].

[31] ROA.6218 [Pg. 129, Lines 14-21].

[32] ROA. 6216-6218 [Pg. 127, Line 23 to Pg. 129, Line 13]; 3692-3693 [Pg. 68, Line 11 to Pg. 69, Line 11]; 3693 [Pg. 69, Lines 12-19]; 3698 [Pg. 74, Lines 1-19]; and 3699 [Pg. 75, Lines 1-10].

[33] ROA.6297 [Pg. 208, Lines 14-18]; 6298 [Pg. 209, Lines 1-15]; and 6329 [Pg. 240, Lines 8-10].

On the following day, October 10, 2018, Mr. Keller went to Nick Richard to confirm that Appellee showed Mr. Richard a picture of his wife's hemorrhoids.[34] Mr. Richard confirmed Appellee showed him a picture of Appellee's wife's hemorrhoids and stated that he thought it was inappropriate.[35] On that same day, Mr. Keller learned that Appellee made a comment about Jordie Ancalade's (a Targa employee) wife.[36] Specifically, Appellee said something to the effect of—don't mess up or you better watch out, you know your wife is right around the corner at the restaurant or go see that pretty girl at the restaurant.[37] On that same day, Appellee admitted that he made a comment about Mr. Ancalade's wife in the Targa control room during business hours.[38] Later that evening, Mr. Keller reported to Tricia Dodson, a Targa's Human Resources representative, about Appellee showing a picture of his wife's hemorrhoids to a Targa employee and the inappropriate wife comments.[39] Mr. Keller also reported he was having issues with Appellee's work performance.[40] Specifically, Mr. Keller reported that

---

[34] ROA.6151 [Pg. 62, Lines 16-18]; 6154 [Pg. 65, Lines 7-16]; and 6219-6220 [Pg. 130, Line 19 to Pg. 131, Line 8].

[35] ROA.6151 [Pg. 62, Lines 16-18]; 6154 [Pg. 65, Lines 7-16]; 6219-6220 [Pg. 130, Line 19 to Pg. 131, Line 8]; 6267 [Pg. 178, Lines 7-10]; and 6273-6274 [Pg. 184, Line 25 to Pg. 185, Line 2].

[36] ROA.6248 [Pg. 157, Lines 2-11]; 6248-6249 [Pg. 157, Line 22 to Pg. 158, Line 5]; and 4316-4317 [Pg. 32, Line 9 to Pg. 33, Line 13].

[37] ROA.6248 [Pg. 157, Lines 2-11].

[38] ROA.6531 [Pg. 88, Lines 16-18]; and 6531-6532 [Pg. 88, Line 25 to Pg. 89, Line 4].

[39] ROA.6220-6221 [Pg. 131, Line 20 to Pg. 132, Line 8].

[40] ROA.6156 [Pg. 67, Lines 13-18]; and 6224 [Pg. 135, Lines 10-14].

he was having trustworthiness issues with Appellee.[41]  Ms. Dodson had a good faith belief in Mr. Keller's report.[42]

### (B) *Appellee's Termination*

Appellee knew as an employee of Targa that he was required to follow Targa's Anti-Harassment Policy.[43]  Appellee understood that if he did not follow Targa's Anti-Harassment Policy he could be subject to disciplinary action, up to and including termination, even for a single offense.[44]  Appellee agreed that if he were to show a picture of his wife's hemorrhoids to another employee, that would be a violation of Targa's Anti-Harassment Policy and could be terminated.[45]

In September 2018 at 9:27 a.m., Appellee received a picture of Brooke Migues's (Appellee's fiancé) hemorrhoids while he was working at Targa.[46]  Appellee showed and discussed the picture of Ms. Migues's hemorrhoids with Mr. Richard in the control room at Targa.[47]

Mr. Keller, Mr. Smith, and Mr. Gregg all recommended termination of

---

[41]  ROA.6224 [Pg. 135, Lines 10-14].

[42]  ROA.6667 [Pg. 224, Lines 12-19].

[43]  ROA.6523 [Pg. 80, Lines 21-24].

[44]  ROA.6523-6524 [Pg. 80, Line 25 to Pg. 81, Line 5]; 6524 [Pg. 81, Lines 6-9]; and 6657 [Pg. 214, Lines 8-10].

[45]  ROA.6530-6531 [Pg. 87, Line 25 to Pg. 88, Line 5]; and 6531 [Pg. 88, Lines 10-12].

[46]  ROA.6529 [Pg. 86, Lines 1-17].

[47]  ROA.6262-6263 [Pg. 173, Line 19 to Pg. 174, Line 4]; 6272 [Pg. 183, Lines 21-24]; and 6529-6530 [Pg. 86, Line 22 to Pg. 87, Line 2].

Appellee's employment at Targa based on Appellee's inappropriate conduct and performance.[48]  Ms. Dodson (Human Resources Representative), Dawn Strickland (Human Resources Director), Karla Roberts-Miller (Vice President of Human Resources), and Elizabeth Hawkins (In-House Legal Counsel) all supported the recommendation of termination.[49]

After receiving the necessary support for the recommendation of Appellee's termination, Targa's Human Resources representatives went to Jessica Keiser ( Senior Vice President of Sustainability and Environmental, Safety, and Health) to get her approval for moving forward with Appellee's termination.[50]  Ms. Keiser was the individual at Targa who made the decision to terminate Appellee's employment.[51]  Prior to making the decision to terminate Appellee's employment, Ms. Keiser considered the information Targa's Human Resources Department presented to her and asked questions to gain clarification.[52]  Ms. Keiser had an honest belief and no doubt that the information Targa's Human Resources Department gave her was true and correct.[53] After Ms. Keiser independently reviewed the information Targa's Human Resources

---

[48]  ROA.6221 [Pg. 132, Lines 4-16]; 6331 [Pg. 242, Lines 1-3]; 3639 [Pg. 15, Lines 23-25; 3691 [Pg. 67, Lines 2-7]; and 3697 [Pg. 73, Lines 20-22].

[49]  ROA.6624 [Pg. 181, Lines 20-21]; 6647-6648 [Pg. 204, Line 25 to Pg. 205, Line 6]; 6670 [Pg. 227, Lines 22-24]; 4582 [Pg. 16, Lines 6-7]; 3824 [Pg. 37, Lines 16-21]; and 3828 [Pg. 41, Lines 10-13].

[50]  ROA.6703 [Pg. 257, Lines 10-23].

[51]  ROA.6703 [Pg. 260, Lines 10-14].

[52]  ROA.6704 [Pg. 261, Lines 19-22]; and 6708 [Pg. 265, Lines 5-11].

[53]  ROA.6704 [Pg. 261, Lines 10-18].

Department gave her, she made the decision to terminate Appellee's employment.[54] Ms. Keiser stated that this was not a rubber-stamp situation.[55] Prior to making the decision to terminate Appellee's employment, Ms. Keiser did not speak to Mr. Gregg, Ms. Hawkins, Ms. Roberts-Miller, Mr. Smith, Mr. Keller, or Mr. Berthelot about terminating Appellee's employment.[56] At the time Ms. Keiser made the decision to terminate Appellee, she was not aware that Appellee was claiming that Mr. Berthelot asked him to dilute sewage samples.[57] Finally, Ms. Keiser was not influenced, coerced, persuaded, or pressured by anyone into making a decision to terminate Appellee's employment at Targa.[58]

Targa terminated Appellee's employment on October 11, 2018. Interestingly, during his termination meeting, Appellee never mentioned he felt he was being retaliated against, that Mr. Berthelot told him to commit a crime, or even brought up the name "Perry Berthelot."[59]

*(C)    Appellee's Alleged Retaliation*

Appellee alleges on October 5, 2018, during a telephone call with Mr. Berthelot,

---

[54] ROA.6704-6705 ]Pg. 261, Line 19 to Pg. 262, Line 3]; and 6711 [Pg. 268, Lines 2-8].

[55] ROA.6705 C.R. [Pg .262, Lines 2-3].

[56] ROA.6329 [Pg. 240, Lines 5-7]; 6705 [Pg. 262, Lines 10-23]; and 6714 [Pg. 271, Lines 17-22].

[57] ROA.6706 [Pg. 263, Lines 18-22].

[58] ROA.6706-6707 [Pg. 263, Line 23 to Pg. 264, Line 2].

[59] ROA.6556 [Pg. 113, Lines 7-16].

Mr. Berthelot asked Appellee to dilute sewage samples.[60]  Appellee never told Mr. Keller

that Mr. Berthelot allegedly asked him to commit a violation of a state environmental

law or that he refused to dilute the sewage samples.[61]  In addition, Appellee never told

Mr. Smith that he refused to dilute the water or sewage samples.[62]

Appellee testified that he does not believe Mr. Keller, Mr. Smith, or Ms. Keiser

retaliated against him.[63]  It is Appellee's contention that Mr. Berthelot is the only person

at Targa who retaliated against him and the person who acted with ill will regarding his

termination.[64]

(D)    *Appellee's Admissions At Trial*

During trial, Appellee admitted to the following:

- He does not have any direct evidence that Mr. Berthelot retaliated against him;[65]

- Everything he is saying with regard to Mr. Berthelot involving his termination is based on pure speculation;[66]

---

[60]  ROA.5985 [Pg. 7, ¶ C(1)].

[61]  ROA.6228 [Pg. 139, Lines 18-21]; 6228-6229 [Pg. 139, Line 25 to Pg. 140, Line 2]; 6380 [Pg. 291, Lines 12-21]; 6587 [Pg. 144, Lines 9-15]; and 6549-6550 [Pg. 106, Line 25 to Pg. 107, Line 3].

[62]  ROA.6379-6380 [Pg. 290, Line 2 to Pg. 291, Line 11]; and 6550-6551 [Pg. 107, Line 11 to Pg. 108, Line 3].

[63]  ROA.6557 [Pg. 114, Lines 17-25]; and 6558 [Pg. 115, Lines 5-20].

[64]  ROA.6557 [Pg. 114, Lines 11-13]; and 6558 [Pg. 115, Lines 1-4].

[65]  ROA.6559 [Pg. 116, Lines 11-13].

[66]  ROA.6559 [Pg. 116, Lines 7-10].

- He has no evidence that Mr. Berthelot was involved in the decision to terminate him or that Mr. Berthelot even had anything to do with his termination;[67]

- The only reason he believes that Mr. Berthelot terminated him is the timing of the alleged request to commit the illegal act and the timing of his termination (i.e., temporal proximity);[68]

- If there were several people involved in the decision to terminate, Mr. Berthelot would have to convince all those people to terminate him;[69]

- He has no evidence that Mr. Berthelot spoke to Ms. Keiser about having him terminated;[70] and

- He has no evidence that Mr. Keller spoke to Ms. Keiser about having him terminated.[71]

*(E)*    *Appellee's Credibility As A Witness*

During trial, the following was presented regarding Appellee's credibility as a witness:

- Appellee agreed that he is not always honest.[72]

- In his October 23, 2018 letter to Targa, Appellee stated he considers himself to be an honest person, however, he admitted he lied about a couple of things in the letter.[73]

---

[67]    ROA.6559 [Pg. 116, Lines 14-19].

[68]    ROA.6559 [Pg. 116, Lines 20-24].

[69]    ROA.6559-6560 [Pg. 116, Line 25 to Pg. 117, Line 4].

[70]    ROA.6560 [Pg. 117, Lines 15-17].

[71]    ROA.6561 [Pg.118, Lines 1-3].

[72]    ROA.6451 [Pg. 8, Lines 10-13].

[73]    ROA.6466-6467 [Pg. 23, Line 23 to Pg. 24, Line 24]; and 7036.

- Appellee was impeached nineteen (19) times at trial.[74]

- Appellee admitted he intentionally lied to Ms. Hawkins, In-House Counsel for Targa, in an email dated October 17, 2018.[75]

- Appellee admitted he represented to Ms. Hawkins in an email dated October 17, 2018, he had a recording of "other issues around the Venice Gas Plant," but, he did not have the recording.[76]

- Appellee admitted he represented to Ms. Hawkins in an email dated October 17, 2018, he had a recording "that would substantiate his credibility," but, he did not have the recording.[77]

- Appellee admitted he intentionally lied to Targa's Chief Executive Officer, Joe Bob Perkins, and Ms. Hawkins in a letter dated October 23, 2018.[78]

- Appellee admitted he lied to Mr. Perkins and Ms. Hawkins when he said in the October 23, 2018 letter he had a recording of a phone call between himself, Mr. Gregg, and Mr. Smith where Mr. Gregg informed Appellee that a complaint had been made against Appellee for making inappropriate comments.[79]

- Appellee admitted he lied to Mr. Perkins and Ms. Hawkins when he said in the October 23, 2018 letter he had a recording of Brogan

---

[74] ROA.6450-6451 [Pg. 7, Lines 8 to Pg. 8, Line 13]; 6454 [Pg. 11, Lines 4-21]; 6459-6461 [Pg. 16, Line 9 to Pg. 18, Line 20]; 6466-6467 [Pg. 23, Line 23 to Pg. 24, Line 24]; 6469 [Pg. 26, Lines 2-21]; 6469-6470 [Pg. 26, Line 22 to Pg. 27, Line 9]; 6470 [Pg. 27, Lines 10-24]; 6471-6472 Pg. 28, Line 13 to Pg. 29, Line 12]; 6472-6473 [Pg. 29, Line 17 to Pg. 30, Line 8]; 6474-6475 [Pg. 31, Line 15 to Pg. 32, Line 3]; 6476-6477 [Pg. 33, Line 21 to Pg. 34, Line 20]; 6484-6485 [Pg. 41, Line 23 to Pg. 42, Line 14]; 6512 [Pg. 69, Lines 1-17]; 6515-6516 [Pg. 72, Line 21 to Pg. 73, Line 21]; 6528 [Pg. 85, Lines 1-25]; 6530-6531 [Pg. 87, Line 11 to Pg. 88, Line 5]; 6546-6547 [Pg. 103, Line 15 to Pg. 104, Line 4]; 6548-6549 [Pg. 105, Line 10 to Pg. 106, Line 6]; and 6549-6550 [Pg. 106, Line 7 to Pg. 107, Line 24].

[75] ROA.6451-6452 [Pg. 8, Line 23 to Pg. 9, Line 6]; and 6453-6454 [Pg. 10, Line 10 to Pg. 11, Line 21].

[76] ROA.6454-6455 [Pg. 11, Line 22 to Pg. 12, Line 5].

[77] ROA.6455-6456 [Pg. 12, Line 17 to Pg. 13, Line 3].

[78] ROA.6457-6458 [Pg. 14, Line 4 to Pg. 15, Line 6]; 6459-6461 [Pg. 16, Line 9 to Pg. 18, Line 20]; and 6466-6467 [Pg. 23, Line 23 to Pg. 24, Line 24].

[79] ROA.6457-6458 [Pg. 14, Line 4 to Pg. 15, Line 6].

Smith saying that the person in question taught him to stab someone in the back and not give it a second thought.[80]

- Appellee admitted he represented to Mr. Perkins and Ms. Hawkins in the October 23, 2018 letter he had a recording of Mr. Keller telling Appellee he is doing a great job and his safety meetings were the best he has ever attended, but, he did not have the recording.[81]

- Appellee admitted he represented to Mr. Perkins and Ms. Hawkins in the October 23, 2018 letter he had a recording of employees making inappropriate comments by employees, but, he did not have the recording.[82]

- Appellee admitted he represented to Mr. Perkins and Ms. Hawkins in the October 23, 2018 letter he had a recording of an employee speaking about chemicals being able to enter the body anally but he did not have the recording.[83]

- Appellee admitted he lied to Targa about having a recording of the following:

  ⟹ The telephone call between himself and Mr. Berthelot where Mr. Berthelot asked him to commit a crime (i.e., dilute the water or sewage samples);[84]

  ⟹ The telephone call between Appellee and Mr. Smith immediately after the alleged telephone call with Mr. Berthelot;[85]

  ⟹ The telephone call between Appellee, Mr. Smith, and Mr. Gregg on October 10, 2019;[86]

---

[80] ROA.6459-6461 [Pg. 16, Line 9 to Pg. 18, Line 20].

[81] ROA.6458 C.R. [Pg. 15, Lines 7-17].

[82] ROA.6459 [Pg. 16, Lines 1-8].

[83] ROA.6461-6462 [Pg. 18, Line 24 to Pg. 19, Line 19].

[84] ROA.6453-6454 [Pg. 10, Line 10 to Pg. 11, Line 21].

[85] ROA.6453-6454 [Pg. 10, Line 10 to Pg. 11, Line 21].

[86] ROA.6457-6458 [Pg. 14, Line 4 to Pg. 15, Line 6].

⇒     Comments made by Brogan Smith about Mr. Berthelot;[87] and

⇒     About the very thing Appellee is suing about in this lawsuit.[88]

- Appellee admitted that during the October 31, 2018 telephone call with Ms. Hawkins, Appellee lied to Ms. Hawkins that he had a recording of Mr. Berthelot asking him to commit a crime.[89]

- Appellee admitted that during the October 31, 2018 telephone call with Ms. Hawkins, Appellee intentionally lied to Ms. Hawkins when he said he was not recording the conversation.[90]

- On December 10, 2018, Appellee filed a Voluntary Petition for Individuals Filing for Bankruptcy in the United States Bankruptcy Court for the Western District of Louisiana.[91]  In his Bankruptcy Petition, Appellee represented under oath that he was not receiving any unemployment when he had already received his October and November 2018 payments.[92]

- In his Bankruptcy Petition, Appellee represented under oath that he was not receiving any family support when he had been receiving $500 a month from his wife's sisters.[93]

- In his Bankruptcy Petition, Appellee represented under oath that he was not receiving any rental income when he had been receiving $977 a month total from three individuals living at his residence.[94]

- In a Court ordered letter from Appellee's company, Advance Investigative Technologies, it states that Appellee has not received

---

[87]  ROA.6467-6468 [Pg. 24, Line 25 to Pg. 26, Line 1]; and 6468 [Pg. 26, Lines 14-21].

[88]  ROA.6452-6453 [Pg. 10, Line 10 to Pg. 11, Line 21].

[89]  ROA.6475 [Pg. 32, Lines 4-12]; and 6476-6477 [Pg. 33, Line 21 to Pg. 34, Line 20].

[90]  ROA.6477-6478 [Pg. 34, Line 21 to Pg. 35, Line 7].

[91]  ROA.6479 [Pg. 36, Lines 10-14].

[92]  ROA.6482 [Pg. 39 Lines 11-20].

[93]  ROA.6484 [Pg. 41, Lines 5-22]; and 6486 [Pg. 43, Lines 4-7].

[94]  ROA.6484-6485 [Pg. 41, Line 23 to Pg. 42, Line 14]; and 6486 [Pg. 43, Lines 8-10].

any distributions, dividends, or income from October 2018 to April 9, 2019.[95]  As a part of his bankruptcy, Appellee filed a Form 1061 on February 14, 2019, whereby Appellee represented that he was receiving $5,600 a month from his company, Advance Investigative Technologies.[96]

- Appellee claims that he did not work between October 2018 to April 9, 2019.[97]  As a part of his bankruptcy, Appellee filed a Form 1061 on December 10, 2018, whereby Appellee represented that he was employed by Safety Management Systems receiving $5,600 a month.[98]

- Appellee testified that Mr. Berthelot allegedly asked him to only dilute the sewage samples at the Delta Gathering Station, but in the October 23, 2018 letter to Targa, Appellee alleged that Mr. Berthelot asked him to dilute both water and sewage samples.[99]

---

[95] ROA.6487-6488 [Pg. 44, Line 23 to Pg. 45, Line 19].

[96] ROA.6488-6491 [Pg. 45, Line 20 to Pg. 48, Line 8]; and 6964 [Pg. 1].

[97] ROA.6491 [Pg. 48, Lines 20-22].

[98] ROA. 6491-6493 [Pg. 48, Line 23 to Pg. 50, Line 3]; and 6938.

[99] ROA.6463-6465 [Pg. 20, Line 9 to Pg. 22, Line 5]; and 6465-6466 [Pg. 22, Line 20 to Pg. 23, Line 5].

# STANDARDS OF REVIEW

## I.    STANDARD OF REVIEW FOR DENIAL OF SUMMARY JUDGMENT

The general rule in this Circuit is that "an interlocutory order denying summary judgment is not reviewable when final judgment adverse to the movant is rendered on the basis of a full trial on the merits."[100]  However, "a denial of summary judgment is appealable after a [bench] trial on the merits when there was a ruling by the district court on an issue of law."[101]  As such, the District Court's denial of Targa's motion for summary judgment is reviewed *de novo*.[102]

## II.   STANDARD OF REVIEW FOR BENCH TRIAL

The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed *de novo*.[103]  A finding of fact is clearly erroneous when, in spite of evidence supporting the finding, the reviewing court, after examining the entire evidence, comes to the "definite and firm conviction" that the trial court made a mistake.[104]

The appellate court shall reverse a trial court's factual findings when the district court's findings are implausible when viewed in light of the entire record.[105]

---

[100]  *Blessey Marine Servs., Inc., v. Jeffboat, L.L.C.*, 771 F.3d 894, 897 (5th Cir. 2014) (quoting *Black v. J.I. Case Co., Inc.*, 22 F.3d 568, 570 (5th Cir. 1994)).

[101]  *Becker v. Tidewater, Inc.*, 586 F.3d 358, 365 n.4 (5th Cir. 2009).

[102]  *Becker*, 586 F.3d at 365.

[103]  *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 262 (5th Cir. 2011) (quoting *Water Craft Mgmt. LLC v. Mercury Marine*, 457 F.3d 484, 488 (5th Cir. 2006)).

[104]  *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 92 L.Ed. 746, 68 S.Ct. 525, 542 (1948).

[105]  *Anderson v. City of Bessemer City. N.C.*, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

## SUMMARY OF THE ARGUMENT

The District Court erred when he concluded in his denial of Targa's Motion for Summary Judgment that Appellee's refusal to participate in diluting the sewage samples was a protected activity under LEWS. The District Court incorrectly relied upon a 1992 Louisiana Supreme Court case, *Cheramie v. J. Wayne Plaisance, Inc.,*[106] to support his conclusion. In *Cheramie*, the Court did not analyze the current version of LEWS which protects an employee who discloses, or threatens to disclose, to a supervisor or public body, a practice which the employee believes violates an environmental law, rule, or regulation.[107] Instead, *Cheramie* analyzed a pre-1991 version of LEWS which prohibited employers from retaliating against "an employee, acting in good faith, who reports or complains about possible environmental violations."[108] There is no language in the current version of LEWS that protects complaints or refusals amounting to complaints, as the Louisiana Supreme Court concluded the pre-1991 version did. While the District Court's reasoning was based on the Louisiana Supreme Court's "guidance" that LEWS is to be afforded a "broad interpretation," no matter how broadly LEWS may be interpreted, it is inconceivable that a "refusal to engage in environmentally damaging conduct" could be construed as a "disclosure or threat to disclose" an activity Appellee

---

[106] *Cheramie v. J. Wayne Plaisance, Inc.,* 595 So. 2d 619, 623 (La. 1992).

[107] *See* La. R.S. 30:2027(A)(1).

[108] *Cheramie,* 595 So. 2d at 623 (emphasis added) (quoting La. R.S. 30:2027 prior to its 1991 amendment).

believed was in violation of an environmental law, rule, or regulation.

The District Court was clearly erroneous in concluding that Appellee's alleged protected activity was the "but-for" cause of his termination. Because the final decisionmaker (Jessica Keiser) had no knowledge that Appellee allegedly engaged in a protected activity, the District Court relied upon the cat's paw theory of liability, a theory introduced and advanced by the District Judge and never plead by Appellee, to conclude Appellee's purported protected activity was the "but-for" cause of his termination.

To satisfy the cat's paw analysis, Appellee must "submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited retaliatory animus, and (2) that the same co-worker possessed leverage, or exerted influence, over the titular decisionmaker."[109] It is undisputed in this case that Mr. Berthelot was the only co-worker who could have had a retaliatory animus against Appellee because he was the only co-worker who was allegedly aware that Appellee allegedly engaged in a protected activity (i.e., refusal to dilute the sewage samples).[110] Further, it is undisputed that no one possessed leverage, or exerted influence over the final decisionmaker—Jessica

---

[109] *Roberson v. Alltel Information Services*, 373 F.3d 647, 653 (5th Cir. 2004) (*citing McKinney Hosp Venture*, 235 F.3d 219, 226 (5th Cir. 2000) (emphasis added).

[110] ROA.6557 [Pg. 114, Lines 11-13]; 6558 [Pg. 115, Lines 1-4]; 6228 [Pg. 139, Lines 18-21]; 6228-6229 [Pg. 139, Line 25 to Pg. 140, Line 2]; 6380 [ Pg. 291, Lines 12-21]; 6587 [Pg. 144, Lines 9-15]; 6379-6380 [Pg. 290, Line 2 to Pg. 291, Line 11]; and 6550-6551 [Pg. 107, Line 11 to Pg. 108, Line 3].

Keiser.[111]   Because there is no evidence that the final decisionmaker was aware of Appellee's alleged protected activity and there is no evidence to establish the two conditions of the cat's paw analysis, the District Court was clearly erroneous in concluding that Appellee's alleged protected activity was the "but-for" cause of his termination.

In its Ruling and Order, the District Court improperly attempts to impute Mr. Berthelot's alleged retaliatory animus to his subordinate, Ted Keller, by using three pieces of evidence.

(1)     Mr. Berthelot was Mr. Keller's direct supervisor;

(2)     Around October 9th, four days after the protected activity, Keller spoke to Berthelot about his plans to report Appellee to HR, even though Appellee was not in Berthelot's chain of command; and

(3)     Keller testified that he had "plenty of time" to speak to Berthelot between October 5th and 9th—the time between the protected activity and Keller's report to HR—about the actions that would be taken as a result of Berthelot and Appellee's conversation regarding diluting samples.[112]

This evidence is insufficient and speculative at best to impute Mr. Berthelot's alleged retaliatory animus to Mr. Keller.   On the contrary, the evidence supports the singular realities that—

---

[111]  ROA.6706-6707 [Pg. 263, Line 23 to Pg. 264, Line 2].

[112]  ROA.5994-5995 [¶ i(i), (iv), and (v)].

(1)     Mr. Berthelot was the *only* person who had an alleged retaliatory animus against Appellee;[113]

(2)     Mr. Berthelot was *not* involved in the termination of Appellee;[114] and

(3)     Mr. Berthelot did *not* influence, coerce, persuade, or pressure anyone into making a recommendation or decision to terminate Appellee's employment at Targa.[115]

Therefore, the District Court was clearly erroneous in concluding that Appellee's alleged protected activity was the "but-for" cause of his termination.

In its Ruling and Order, the District Court goes to great lengths to criticize everyone involved in Appellee's termination process for relying upon Mr. Keller's report and not conducting an independent investigation before terminating Appellee.[116] This criticism was a major factor in the District Court's decision to find that Appellee's alleged protected activity was the "but-for" cause of his termination.

In employment lawsuits where an employer decides to terminate an employee based on his violation of a particular rule or policy, or receives complaints about a

---

[113]   ROA.6557-6558 [Pg. 114, Line 11 to Pg. 115, Line 20]. 6228 [Pg. 139, Lines 18-21]; 6228-6229 [Pg. 139, Line 25 to Pg. 140, Line 2]; 6380 [ Pg. 291, Lines 12-21; 6587 [Pg. 144, Lines 9-15]; 6379-6380 [Pg. 290, Line 2 to Pg. 291, Line 11]; and 6550-6551 [Pg. 107, Line 11 to Pg. 108, Line 3].  Tere check these?

[114]   ROA.6609 [Pg. 166, Lines 8-11]; 6224 [Pg. 135, Lines 15-19]; 3639 [Pg. 15, Lines 23-25]; 3691 [Pg. 67, Lines 2-7]; 3697 [Pg. 73, Lines 20-22]; 6671-6672 [Pg. 228, Line 21 to Pg. 229, Line 1]; and 6706-6707 [Pg. 263, Line 23 to Pg. 264, Line 2].

[115]   ROA.6609 [Pg. 166, Lines 8-11]; 6224 [Pg. 135, Lines 15-19]; 3639 [Pg. 15, Lines 23-25]; 3691 [Pg. 67, Lines 2-7]; 3697 [Pg. 73, Lines 20-22]; 6671-6672 [Pg. 228, Line 21 to Pg. 229, Line 1]; and 6706-6707 [Pg. 263, Line 23 to Pg. 264, Line 2].

[116]   ROA.5988-5993.

particular employee's conduct or behavior from co-workers, "the validity of the initial complaint is not the central issue because the ultimate falseness of the complaint proves nothing as to the employer, only as to the complaining employee."[117] The "real issue is whether the employer reasonably believed the employee's allegation and acted on it in good faith, or to the contrary, the employer did not actually believe the co-employee's allegation but instead used it as a pretext" for a retaliatory dismissal.[118] "Thus, the inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief."[119]

Although the District Court may have disapproved with everyone involved in Appellee's termination process relying upon Mr. Keller's report and did not conduct an independent investigation before terminating Appellee, it is immaterial because the individuals involved with Appellee's termination had a good faith belief in Mr. Keller's report. In addition, improper or inadequate investigations are not sufficient to

---

[117] *Willis v. Cleco Corp.*, No. 09-2103, 2011 WL 4443312, at *12 (W.D. La. Sept. 22, 2011) (quoting *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165 (5th Cir. 1993)) (emphasis added) (internal quotation omitted)); *see Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 Fed. Appx. 917, 924 (5th Cir. 2009); *see also Strahan v. Waste Mgmt.*, CV H-10-2441, 2011 WL 13124110, at *5 (S.D. Tex. Dec. 27, 2011) ("When an employee is discharged for failing to comply with a work rule, the issue is whether the employer reasonably and in good faith believed that the violation did occur."); *Bardwell v. GlobalSantaFe Drilling Co.*, CIV A H-06-0171, 2007 WL 2446801, at *11 (S.D. Tex. Aug. 23, 2007*)* ("When an employee is discharged for failing to comply with a work rule, the issue is whether the employer reasonably and in good faith believed that the violation occurred."); *McCombs v. MS Communications Am., Inc.*, CIV.A.SA00CA0623NN, 2002 WL 1491724, at *7 (W.D. Tex. Apr. 23, 2002) ("The critical issue in those cases, as in this case, is whether the defendants believed in good faith that plaintiff had committed the offensive behavior and that plaintiff was terminated for that reason.").

[118] *Waggoner*, 987 F.2d at 1165.

[119] *Id.* (emphasis added).

demonstrate pretext and that the employer acted with retaliatory animus. *See, e.g., Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 489 (5th Cir. 2004) (reversing and rendering judgment in favor of the former employer by finding Plaintiff's reliance on an improper or selective investigation was not sufficient evidence to show pretext for retaliation for engaging in a protected activity); *Geddis v. University of Delaware*, 40 F. App'x 650, 653 (3d Cir. 2002) (finding that an inadequate investigation is not sufficient to demonstrate pretext); and *Ade v. KidsPeace Corp.*, 698 F. Supp. 2d 501, 519 (E.D. Pa. 2010), aff'd, 401 Fed. Appx. 697 (3d Cir. 2010) (finding that although the employer could have conducted a more rigorous interview of plaintiff regarding the allegations, the employer acted reasonably and in good faith in relying on the complaint and termination). As a result, the District Court was clearly erroneous in concluding that Appellee's alleged protected activity was the "but-for" cause of his termination.

In its Ruling and Order, the District Court found that Mr. Berthelot's asking Appellee to dilute the sewage samples was the protected activity that was the "but-for" cause of Appellee's termination. However, the District Court previously ruled in its Ruling and Order on Targa's Motion for Summary Judgment that Appellee's refusal to dilute the sewage samples was the protected activity under LEWS.[120] The District Court does not even mention Appellee's refusal to dilute the sewage samples was the "but-for" cause of his termination in its Ruling and Order. Instead, the District Court

_____

[120] ROA.5099.

only discusses Mr. Berthelot's asking Appellee to dilute the sewage samples, which is not a protected activity under LEWS. As a result, the District Court was clearly erroneous in concluding a causal link existed between Appellee's alleged protected activity and his adverse employment action under LEWS.

## ARGUMENT & AUTHORITIES

## I. THE DISTRICT COURT ERRED WHEN IT DETERMINED APPELLEE'S REFUSAL TO PARTICIPATE IN DILUTING THE SEWAGE SAMPLES WAS A PROTECTED ACTIVITY UNDER LEWS

On June 17, 2020, the District Court issued its Ruling and Order denying Targa's Motion for Summary Judgment.[121] In its Ruling and Order, the District Court concluded that Appellee's *reporting* of Mr. Berthelot's alleged request to dilute the sewage samples did <u>not</u> constitute a protected activity under LEWS.[122] However, the District Court also concluded that Appellee's *refusal* to participate in diluting the sewage samples <u>was</u> a protected activity under LEWS.[123]

The District Court relied upon the Louisiana Supreme Court case, *Cheramie v. J. Wayne Plaisance, Inc.,*[124] to support its conclusion. Specifically, the District Court stated:

> "Though the Louisiana Supreme Court has not weighed in on this issue, it has interpreted the *Cheramie* holding as "support[ing] a broad interpretation of the whistleblower statute." *Borcik v. Crosby Tugs, L.L.C.*, 2016-1372 (La. 5/3/17), 222 So. 3d 672, 677. In accordance with the Louisiana Supreme Court's guidance, this Court recognizes that a refusal to participate in illegal and environmentally damaging conduct is a protected activity under the LEWS."[125]

Importantly, the Louisiana Supreme Court in *Cheramie* did not analyze the current

---

[121] ROA.5100.

[122] ROA.5099. ("[T]he Court concludes that Appellee's reporting of Berthelot's request did not constitute a protected activity because it was part of his normal job responsibilities.").

[123] ROA.5099.

[124] 595 So. 2d 619, 623 (La. 1992).

[125] ROA.5099.

version of LEWS which protects an employee who "[d]iscloses, or threatens to disclose, to a supervisor or public body, a[] . . . practice . . . that the employee reasonably believes is in violation of an environmental law, rule, or regulation.[126] *Cheramie*, rather, analyzed a pre-1991 version of LEWS which prohibited employers from retaliating against "an employee, acting in good faith, who reports or complains about possible environmental violations."[127] In *Cheramie*, the employee suggested that certain practices of his employer were illegal and requested alternate work.[128] Shortly thereafter, the employee was fired.[129] The Court noted that the employee's refusal to participate in illegal and environmentally damaging work effectively amounted to a "complaint" under the pre-1991 version of LEWS.[130] Specifically, the Court stated:

> "Refusal to participate in illegal and environmentally damaging work is an extreme form of complaint, and constitutes "complaining" under LSA–R.S. 30:2027(B)."[131]

However, the current version of LEWS states as follows:

A. No firm, business, private or public corporation, partnership, individual employer, or federal, state, or local governmental agency shall act in a retaliatory manner against an employee, acting in good faith, who does any of the following:

---

[126] *See* La. R.S. 30:2027(A)(1).

[127] *Cheramie*, 595 So. 2d at 623 (emphasis added) (quoting La. R.S. 30:2027 prior to its 1991 amendment).

[128] *Id.* at 621-22.

[129] *Id.* at 622.

[130] *Id.* at 624.

[131] *Id.* at 624.

    (1) *Discloses, or threatens to disclose*, to a supervisor or to a public body an activity, policy, practice of the employer, or another employer with whom there is a business relationship, that the employee reasonably believes is in violation of an environmental law, rule, or regulation.[132]

Unlike the pre-1991 version, there is no language in the current version of LEWS that protects complaints or refusals amounting to complaints. Louisiana courts have found that the legislature's omission of a particular provision in a subsequent amendment reflects its intention that the provision be excluded.[133]

Federal courts sitting in diversity "are bound to dispatch [their] duty of legal interpretation as would a court of Louisiana, relying primarily on Louisiana's Revised Civil Code of 1870 (the Code) and other statutory law, including the rules of interpretation contained therein."[134] Louisiana's rules of statutory interpretation are well settled and codified in part under the Louisiana Civil Code.[135]

The paramount consideration in statutory construction is ascertainment of the

---

[132] *See* La. R.S. 30:2027(A)(1) (emphasis added).

[133] *Cameron v. Rowland*, 215 La. 177, 232; 40 So.2d 1 (1948) ("Since this amendment omitted completely the prior provision that such shares would be the separate property of the wife, we consider that the Legislature intended that the ownership of such shares would thereafter be determined by the general laws of the state; therefore, the shares purchased by Mrs. Rowland from the effective date of this act until the effective date of Act No. 95 of 1940 are under its provisions community property."); *Brown v. BASF Corp.*, CIV.A. 02-2316, 2003 WL 133227, at *2 (E.D. La. Jan. 14, 2003) ("The 1997 amendments to R.S. 23:1061 reinstated the integral relations test of *Thibodeaux v. Sun Oil,* 49 So.2d 852 (1950). The fact that the legislature chose to omit the language referring to extraordinary or new construction that was present in the 1989 amendment shows that the legislature intended to fully reinstate the integral relations test as it was interpreted by *Thibodeaux v. Sun Oil, supra* and its progeny.").

[134] *Gen. Elec. Capital Corp. v. Se. Health Care, Inc.*, 950 F.2d 944, 950 (5th Cir. 1991).

[135] La. Civ. Code art. 9–13.

legislative intent and the reason or reasons which prompted the legislature to enact the law.[136]  The starting point for the interpretation of any statute is the language of the statute itself.[137]  Where the statute's text is clear and unambiguous and its application does not lead to absurd consequences, the provision is applied as written with no further interpretation made in search of the Legislature's intent.[138]  In the event the language of a statute is susceptible of different meanings, the interpretation must best conform to the purpose of the law.[139]

When analyzing legislative history, it is presumed the legislature's actions in crafting a law were knowing and intentional.[140]  More particularly, the legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject.[141]  Thus, legislative language will be interpreted on the assumption the legislature was aware of existing statutes, well established principles of statutory construction and with knowledge of the effect of their acts and a purpose in

---

[136]  *Foti v. Holliday,* 09–0093, p. 6 (La.10/30/09), 27 So. 3d 813, 817; *M.J. Farms, Ltd. v. Exxon Mobil Corp.,* 07–2371, p. 13 (La.7/1/08), 998 So.2d 16, 27.

[137]  *Foti,* 09–0093 at p. 6, 27 So. 3d at 817; *Dejoie v. Medley,* 08–2223, P. 6 (La.5/5/09), 9 So. 3d 826, 829.

[138]  La. Civ. Code art. 9; *Foti,* 09–0093 at p. 6, 27 So. 3d at 817; LSA–C.C. art. 9; LSA–R.S. 1:4.

[139]  La. Civ. Code art. 10;

[140]  *Foti,* 09–0093 at p. 6, 27 So.3d at 817; *M.J. Farms, Ltd.,* 07–2371 at pp. 13–14, 998 So2d at 27.

[141]  *Hays v. Louisiana State Bd. of Elementary & Secondary Educ.,* 2009-1386, p. 8 (La.App. 1 Cir. 6/11/10); 39 So. 3d 818, 823, *writ denied,* 2010-1640 (La. 10/8/10); 46 So. 3d 1272.

view.[142]

Even if a Court believes the legislature erred in expressing its intention, "it is not the function of the judicial branch to correct such an error, unless the error creates an ambiguity. Such an error (if one occurred) should be corrected by the legislature."[143] Indeed, as the Supreme Court of the United States has cautioned, "[i]f judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives."[144]

The current version of LEWS does not protect complaints, or refusals amounting to complaints, as the pre-1991 version did.[145] In fact, the words "complaint" or "refusal" are not even in the applicable section of the current version of LEWS.[146] Rather, the current iteration of LEWS protects employees who "disclose[] or threaten[] to disclose" certain violations to a supervisor or authoritative body.[147] Noteworthy is the fact that Appellee never told his supervisor about his refusal to dilute the sewage samples and did not make a report to an authoritative body until two months *after* his

---

[142] *M.J. Farms, Ltd.,* 07–2371 at pp. 13–14, 998 So.2d at 27.

[143] *Rada v. Adm'r, Div. of Employment Sec., State Dep't of Labor*, 319 So.2d 460, 463 (La. Ct. App.1975), writ denied, 323 So.2d 128 (La. 1975).

[144] *Bostock v. Clayton Cnty., Georgia*, 140 S.Ct. 1731, 1738 (2020).

[145] *See* La. R.S. 30:2027(A)

[146] *See* La. R.S. 30:2027(A)

[147] *See* La. R.S. 30:2027(A)

termination in a complaint drafted by his attorneys to the Louisiana Department of Environmental Quality.[148] Had the legislature intended to protect a "refusal" to participate in illegal activity under LEWS, it would have included this protection in its plain language.[149] However, it did not. In fact, the legislature narrowed the statute to protect "disclosures" or "threats to disclose" violations of environmental law to a supervisor authoritative body.[150]

While the District Court's reasoning was based on a "broad interpretation," no matter how liberally the statutory language may be construed, it is a strain of the foundational tenets of statutory interpretation indeed to find that "**a refusal to participate in illegal and environmentally damaging conduct**" is the functional equivalent of a **disclosure or threatened disclose of a violation of an environmental law, rule or regulation to a supervisor an activity**" that the employee reasonably believes is in violation of an environmental law, rule or regulation.

Even interpreting such language "broadly" as the Louisiana Supreme Court has

---

[148] ROA.6379-6380 [Pg. 290, Line 2 to Pg. 291, Line 11]; 6550-6551 [Pg. 107, Line 11 to Pg. 108, Line 3]; 6554-6555 [Pg. 111, Line 25 to Pg. 112, Line 12]; and 6555 [Pg. 112, Lines 16-21].

[149] *Compare* La. R.S. 30:2027(A) (protecting disclosures and threats to disclose violations of environmental law to a supervisor and testimony or participation into a governmental investigation), *with* the general Louisiana Whistleblower Act, La. R.S. § 23:967 (protecting an employee who "(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law. (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law. **(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.**") (emphasis added).

[150] *See* La. R.S. 30:2027(A)

directed in *Cheramie*, the District Court in this case has essentially rewritten the statute and has expanded its terms to include an entirely separate—judicially created—protected activity.

As a result, the District Court erred when it determined that Appellee's refusal to participate in diluting the sewage samples was a protected activity under LEWS. Therefore, this Court should reverse and render the Final Judgment of the District Court because Appellee did not demonstrate in his response to summary judgment that he engaged in a protected activity under LEWS.

## II. THE DISTRICT COURT WAS CLEARLY ERRONEOUS IN CONCLUDING THAT APPELLEE'S ALLEGED PROTECTED ACTIVITY WAS THE BUT-FOR CAUSE OF HIS TERMINATION

In order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity.[151] To determine whether an adverse employment action occurred as a result of retaliation, the court's focus is on the final decisionmaker.[152] If the final decisionmaker was unaware of the plaintiff's protected activity, "then it could not be said (even as an initial matter) that the decisionmaker might have been retaliating against the plaintiff for having engaged in that activity."[153]

Here, it is undisputed that Jessica Keiser, the Vice President of the Environmental, Health and Safety Department at Targa, was the final decisionmaker in regards to Appellee's termination of employment and that Ms. Keiser was unaware of Appellee's alleged protected activity.[154]

---

[151] *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir.2003); *see also Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir.1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.").

[152] *Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002).

[153] *Id.* at 883 n.6; *see also Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.").

[154] ROA.6224-6225 [Pg. 135, Line 24 to Pg. 136, Line 5]; 6329 [Pg. 240, Lines 1-4]; 6315-6316 [Pg. 226, Line 18 to Pg. 227, Line 4]; 6700 [Pg. 257, Lines 21-23]; 6703 [Pg. 260, Lines 10-14]; and 6706 Pg. 263, Lines 18-22]; and 5102.

As the District Court noted in its Ruling and Order on Targa's Motion for Summary Judgment, because Ms. Keiser had no knowledge of the alleged protected activity, Appellee must prove causation under the "cat's paw" theory of liability.[155] Specifically, the District Court concluded in its Ruling and Order dated June 17, 2020:

> "At trial, Plaintiff must demonstrate that Smith, Keller, or Fitzgerald had retaliatory animus and used Keiser to bring about the intended retaliatory action."[156]

There was no competent evidence submitted at trial establishing that Mr. Smith, Mr. Keller, or Mr. Fitzgerald had retaliatory animus and used or somehow influenced Ms. Keiser to bring about the intended retaliatory action. In fact, Appellee testified that the only person who had retaliatory animus against him was Mr. Berthelot.[157]

To satisfy the cat's paw analysis, Appellee must "submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited retaliatory animus and (2) that the same co-worker possessed leverage, or exerted influence, over the titular decisionmaker."[158] It is undisputed in this case that Mr. Berthelot was the *only* co-worker who could have had a retaliatory animus against Appellee because he was the *only* co-worker that was allegedly aware that Appellee engaged in a protected activity

---

[155] ROA.5102.

[156] ROA.5097.

[157] ROA.6557 [Pg. 114, Lines 11-13]; and 6558 [Pg. 115, Lines 1-4].

[158] *Roberson v. Alltel Information Services*, 373 F.3d 647, 653 (5th Cir. 2004) (*citing McKinney Hosp Venture*, 235 F.3d 219, 226 (5th Cir. 2000).

(i.e., refusal to dilute the sewage samples).[159]  In addition, it is undisputed that no one

possessed leverage, or exerted influence over the final decisionmaker—Jessica Keiser.[160]

In fact, Ms. Keiser testified that she independently considered the information Targa's

Human Resources representatives presented to her before making the decision to

terminate Appellee and that she did not treat Appellee's termination as a rubber stamp

situation.[161]  Because there is no evidence that the final decisionmaker was aware of

Appellee's alleged protected activity and there is no evidence to establish the two

conditions of the cat's paw analysis, the District Court was clearly erroneous in

concluding that Appellee's alleged protected activity was the "but-for" cause of his

termination.  As a result, the Final Judgment in this case should be reversed and

rendered.

The logic upon which the District Court premises its theory of cat's paw liability

is suspect.  The District Court appears to argue that Mr. Berthelot used Mr. Keller to

orchestrate Appellee's termination.  **It is important to note that Mr. Keller was

neither the final decisionmaker nor a co-worker who had any retaliatory animus**

---

[159]  ROA.6557 [Pg. 114, Lines 11-13]; 6558 [Pg. 115, Lines 1-4]; 6228 [Pg. 139, Lines 18-21]; 6228-6229 [Pg. 139, Line 25 to Pg. 140, Line 2]; 6380 [Pg. 291, Lines 12-21]; 6587 [Pg. 144, Lines 9-15]; 6379-6380 [Pg. 290, Line 2 to Pg. 291, Line 11]; and 6550-6551 [Pg. 107, Line 11 to Pg. 108, Line 3].

[160]  ROA.6706-6707 [Pg. 263, Line 23 to Pg. 264, Line 2].

[161]  ROA.6704-6705 [Pg. 261, Line 19 to Pg. 262, Line 3]; and 6705 [Pg. 262, Lines 2-3].

**toward Appellee**.[162]  In support of its cat's paw liability analysis, the District Court relies on three pieces of evidence in an effort to impute Mr. Berthelot's alleged retaliatory animus to Mr. Keller:

(1)     Mr. Berthelot was Mr. Keller's direct supervisor;

(2)     Around October 9th, four days after the protected activity, Keller spoke to Berthelot about his plans to report Appellee to HR, even though Appellee was not in Berthelot's chain of command; and

(3)     Keller testified that he had "plenty of time" to speak to Berthelot between October 5th and 9th—the time between the protected activity and Keller's report to HR—about the actions that would be taken as a result of Berthelot and Appellee's conversation regarding diluting samples.[163]

First, simply because Mr. Keller reported to Mr. Berthelot is not enough to impute Mr. Berthelot's alleged retaliatory animus to Mr. Keller.  *See, e.g., Peters v. Harrah's New Orleans*, 418 F.Supp.2d 843 (E.D. La. 2006) (finding the plaintiff failed to raise a genuine issue of material fact on alleged wrongdoer's knowledge simply because he reported to an individual who was aware of the plaintiff's protected conduct).  Second, on October 9th, Mr. Keller had already decided to report Appellee to Human Resources based on complaints he received.  It is unclear how this conversation could have imputed Mr. Berthelot's alleged retaliatory animus to Mr. Keller.  And finally, the mere fact that two co-workers having the ability to talk over a certain period of time is not

---

[162]  ROA.6557 [Pg. 114, Lines 11-13]; 6558 [Pg. 115, Lines 1-4]; 6224-6225 [Pg. 135, Line 24 to Pg. 136, Line 5]; 6329 [Pg. 240, Lines 1-4]; 6669-6670 [Pg. 226, Line 19 to Pg. 227, Line 2]; 6700 [Pg. 257, Lines 21-23]; 6703 [Pg. 260, Lines 10-14]; and 6706 [Pg. 263, Lines 18-22]; and 5102.

[163]  ROA.5995-5996 [¶ i(i), (iv), and (v)].

enough to impute a retaliatory animus from one person to another. Indisputably, Mr. Berthelot was the only person who had an alleged retaliatory animus against Appellee, Mr. Berthelot was not involved in the termination of Appellee, and Mr. Berthelot did not influence, coerce, persuade, or pressure anyone into making a recommendation or decision to terminate Appellee's employment at Targa.[164] Even if Appellee did present evidence that Mr. Keller knew of Appellee's alleged "protected activity," which he did not, Appellee offered no evidence to overcome the collective decision-making process used at Targa.[165]

Any other alleged circumstantial evidence relied upon by the District Court to support his conclusion that Appellee's alleged protected activity was the "but-for" cause of his termination is meaningless and should not be considered because the District Court did not establish that the final decisionmaker had a retaliatory animus toward Appellee or that Mr. Berthelot possessed leverage or exerted influence over the final decisionmaker. Therefore, the District Court was clearly erroneous in concluding that Appellee's alleged protected activity was the "but-for" cause of his termination and the Final Judgment in this case should be reversed and rendered.

In its Ruling and Order, the District Court goes to great lengths to criticize

---

[164] ROA.6706-6707 [Pg. 263, Line 23 to Pg. 264, Line 2]; 6609 [Pg. 166, Lines 8-11]; 6224 [Pg. 135, Lines 15-19]; 6330-6331 [Pg. 242, Line 22 to Pg. 243, Line 2]; 6221 [Pg. 132, Lines 4-15]; 3639 [Pg. 15, Lines 23-25]; 3691 [Pg. 67, Lines 2-7]; 3695 [Pg. 73, Lines 20-22]; 6671-6672 [Pg. 228, Line 21 to Pg. 229, Line 1]; 6706-6707 [Pg. 263, Line 23 to Pg. 264, Line 2].

[165] *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 806 n.2 (5th Cir. 2007).

everyone involved in Appellee's termination process for relying upon Mr. Keller's report and not conducting an independent investigation before terminating Appellee.[166] This criticism was a major factor in the District Court's decision to find that Appellee's alleged protected activity was the "but-for" cause of his termination. For example, the District Court stated:

> Again, Keiser, as the final decisionmaker in the termination process, did not ask for any information, conduct any investigations, or speak with anyone other than the HR representatives prior to terminating Plaintiff. The HR representatives did not take any steps to investigate Keller's allegations against Plaintiff. (Doc. 132, p. 49, ¶ 36). Accordingly, the chain of command was left unbroken. (Id.). The decision leads directly to Keller and Berthelot.[167]

In employment lawsuits where an employer decides to terminate an employee based on his violation of a particular rule or policy, or receives complaints about a particular employee's conduct or behavior from co-workers, **"the validity of the initial complaint is not the central issue because the ultimate falseness of the complaint proves nothing as to the employer, only as to the complaining employee."**[168] The

---

[166] ROA.5988-5993..

[167] ROA.5979 [Pg. 18, ¶ 8(i)(xi)].

[168] *Willis v. Cleco Corp.*, No. 09-2103, 2011 WL 4443312, at *12 (W.D. La. Sept. 22, 2011) (quoting *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165 (5th Cir. 1993)) (emphasis added) (internal quotation omitted)); *see Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 Fed. Appx. 917, 924 (5th Cir. 2009); *see also Strahan v. Waste Mgmt.*, CV H-10-2441, 2011 WL 13124110, at *5 (S.D. Tex. Dec. 27, 2011) ("When an employee is discharged for failing to comply with a work rule, the issue is whether the employer reasonably and in good faith believed that the violation did occur."); *Bardwell v. GlobalSantaFe Drilling Co.*, CIV A H-06-0171, 2007 WL 2446801, at *11 (S.D. Tex. Aug. 23, 2007)*

"real issue is whether the employer reasonably believed the employee's allegation and acted on it in good faith, or to the contrary, the employer did not actually believe the co-employee's allegation but instead used it as a pretext" for a retaliatory dismissal.[169]

**"Thus, the inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief."**[170]

On October 9, 2018, a Targa employee reported to Mr. Keller that Appellee showed a picture of his wife's hemorrhoids to another Targa employee.[171] In addition, an independent contractor for Targa reported to Mr. Keller that Appellee made a comment about hooking up with his wife.[172] Mr. Keller had a reasonable, good faith belief in the employee and independent contractor's report about Appellee showing a picture of his wife's hemorrhoids to a Targa employee and Appellee making a comment about hooking up with one of Targa's independent contractor's wife.[173] At trial,

---

("When an employee is discharged for failing to comply with a work rule, the issue is whether the employer reasonably and in good faith believed that the violation occurred."); *McCombs v. MS Communications Am., Inc.*, CIV.A.SA00CA0623NN, 2002 WL 1491724, at *7 (W.D. Tex. Apr. 23, 2002) ("The critical issue in those cases, as in this case, is whether the defendants believed in good faith that plaintiff had committed the offensive behavior and that plaintiff was terminated for that reason.").

[169] *Waggoner*, 987 F.2d at 1165.

[170] *Id.* (emphasis added).

[171] ROA.6147 [Pg. 58, Lines 13-17]; 6216-6218 [Pg. 127, Line 23 to Pg. 129, Line 13]; and 6636 [Pg. 193, Lines 12-16].

[172] ROA.6147-6148 [Pg. 58, Line 13 to Pg. 58, Line 4]; and 6216 – 6218 [Pg. 127, Line 23 to Pg. 129, Line 13].

[173] ROA.6218 [Pg. 129, Lines 14-21].

Appellee testified that he knew as an employee of Targa that he was required to follow Targa's Anti-Harassment Policy and understood that if he did not follow Targa's Anti-Harassment Policy he could be subject to disciplinary action, up to and including termination, even for a single offense.[174] Appellee agreed that if he were to show a picture of his wife's hemorrhoids to another employee, that would be a violation of Targa's Anti-Harassment Policy and he could be terminated.[175]

After learning about this information, Mr. Keller made a report to Mr. Smith, Appellee's Supervisor, and then to Mr. Smith's Supervisor, Mr. Gregg.[176] Mr. Smith and Mr., Gregg both had a good faith belief in the report that Mr. Keller reported.[177]

On October 10, 2018, Mr. Keller reported to Tricia Dodson with Targa's Human Resources Department about Appellee showing a picture of his wife's hemorrhoids to a Targa employee and the inappropriate wife comments.[178] Tricia Dodson had a good faith belief regarding the report made by Mr. Keller.[179]

A representative from Targa's Human Resources Department went to Ms.

---

[174] ROA.6523 [Pg. 80, Lines 21-24]; 6523-6524 [Pg. 80, Line 25 to Pg. 81, Line 5]; 6524 [Pg. 81, Lines 6-9]; and 6657 [Pg. 214, Lines 8-10].

[175] ROA.6530-6531 [Pg. 87, Line 25 to Pg. 88, Line 5]; and 6531 [Pg. 88, Lines 10-12].

[176] ROA.6216-6218 [Pg. 127, Line 23 to Pg. 129, Line 13]; and 3692-3693 [Pg. 68, Line 11 to Pg. 69, Line 11].

[177] ROA.6297 [Pg. 208, Lines 14-18]; 6298 [Pg. 209, Lines 1-15]; and 6329 [Pg. 240, Lines 8-10]; 3693 [Pg. 69, Lines 12-19]; 3698 [Pg. 74, Lines 1-19]; and 3699 [Pg. 75, Lines 1-10].

[178] ROA.6220-6221 [Pg. 131, Line 20 to Pg. 132, Line 8].

[179] ROA.6667 [Pg. 224, Lines 12-19].

Keiser to get her approval to terminate Appellee.[180]   During this meeting, Targa's Human Resources representative told Ms. Keiser about Appellee's inappropriate conduct.[181]  Ms. Keiser had a reasonable, good faith belief in Targa's Human Resources Department's report of Appellee's inappropriate conduct.[182]

Although the District Court may have disapproved that everyone involved in Appellee's termination process relied upon Mr. Keller's report and did not conduct an independent investigation before terminating Appellee, it is immaterial because the individuals involved with Appellee's termination had a good faith belief in what was being reported.

Appellee was "required to produce evidence demonstrating that [Targa] did not in good faith believe [the co-workers'] allegations, but relied on them in a bad faith pretext to . . . retaliate against him . . . ."[183]  "The question is not whether [Targa] made an erroneous decision"; it is whether the decision was made with retaliatory motive.[184]  "[A] fired employee's actual innocence of his employer's accusation is irrelevant as long

[180]  ROA.6703 [Pg. 260, Lines 15-22].

[181]  ROA.6730 [Pg. 260, Lines 15-22].

[182]  ROA.6703-6704 [Pg. 260, Line 15 to Pg. 261, Line 18].

[183]  *Id.*

[184]  *Harris v. Chem Carriers Towing*, No. 15-596-SDD-RLB, 2017 WL 4158620, at *5 (M.D. La. Sept. 18, 2017) (quoting *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)); *see also Singh v. Shoney's Inc.*, No. 94-254, 1994 WL 261834, at *2 (E.D. La. June 3, 1994).

as the employer reasonably believed it and acted on it in good faith."[185]  Louisiana federal courts have consistently applied this standard in employment claims.[186]

Under Louisiana's employment-at-will statutes, an employer may terminate an employee even if the reason for termination was based on incorrect or carelessly gathered information.[187]  Courts do not sit as a super-personnel department that reexamines an entity's business decisions.[188]

Based on the foregoing, the District Court was clearly erroneous in concluding Appellee's alleged protected activity was the "but-for" cause of his termination and the Final Judgment in this case should be reversed and rendered.

[185]  *Cervantez v. KMGP Servs. Co.*, 349 Fed. Appx. 4, 10 (5th Cir. 2009); *see also Jones v. Flagship Intern.*, 793 F.2d 714, 729 (5th Cir. 1986); *Long v. Eastfield College*, 88 F.3d 300, 306 (5th Cir. 1996).

[186]  *Johnson v. JP Morgan Chase Bank, N.A.*, 293 F. Supp. 3d 600, 614 (W.D. La. 2018); *Jones v. Children's Hosp.*, 58 F. Supp. 3d 656, 666 (E.D. La. 2014); *Hatfield v. Bio-Medical Life Applications of La., LLC*, No. 16-1307, 2017 WL 4976801, at *6–7 (W.D. La. Oct. 31, 2017); *Finley v. Fla. Parish Juvenile Detention Ctr.*, No. 12-726, 2013 WL 4710404, at *8–9 (E.D. La. Aug. 30, 2013); *Hardy v. Fed. Exp. Corp.*, No. 97-1620, 1998 WL 419716, at *4 (E.D. La. July 21, 1998); *LeJeune v. Avondale Indus., Inc.*, No. 95-2600, 1996 WL 225029, at *6 (E.D. La. May 1, 1996).

[187]  *Johnson v. Delchamps, Inc.,* 897 F.2d 808, 811 (5th Cir. 1990) (holding that, under Louisiana law, an employer may terminate an at-will employee even if the reason for termination was based on incorrect or carelessly gathered information).

[188]  *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988).

## III. THE DISTRICT COURT WAS CLEARLY ERRONEOUS IN CONCLUDING A CAUSAL LINK EXISTED BETWEEN APPELLEE'S ALLEGED PROTECTED ACTIVITY AND HIS ADVERSE EMPLOYMENT ACTION UNDER LEWS

In the District Court's "Whether Retaliation Was "But-For" Cause of Termination" section of its Ruling and Order, the factual findings the District Court relied upon to conclude that Appellee's alleged protected activity was the "but-for" cause of his termination were clearly erroneous. Specifically, the District Court identifies the following facts as evidence of the alleged protected activity that was the "but-for" cause of Appellee's termination:

1. Plaintiff testified that on October 5, 2018, Perry Berthelot, Targa's District Manager, told Plaintiff to dilute sewage samples in order to pass regulatory checks (Doc. 132, p. 4-5, ¶¶ 26, 31; 37]; Doc. 124, p.6).

8(a.) Plaintiff testified that Perry Berthelot, District Manager, asked him to dilute sewage samples. (Doc. 124, p. 6; Doc. 132, p. 4-5, ¶¶ 26, 37).[189]

A district court's findings of fact under Rule 52(a) should "afford [the appellate court] a clear understanding of the ground or basis of the decision of the trial court."[190] "Findings of fact must be made in sufficient detail and exactness to indicate the factual basis for the ultimate conclusion reached by the court."[191] "[T]he findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court

---

[189] *See* ROA.5921 [ ¶¶ C(1) and C(8)(a)].

[190] *In re Ithaca Corp.*, 582 F.2d 3, 4 (5th Cir.1978).

[191] *S.S. Silberblatt, Inc. v. United States ex rel. Lambert Corp.*, 353 F.2d 545, 549 (5th Cir. 1965).

the steps by which the trial court reached its ultimate conclusion on each factual issue."[192]

Here, the District Court states that Mr. Berthelot's asking Appellee to dilute the sewage samples was the protected activity that was the "but-for" cause of Appellee's termination. However, the District Court previously ruled in its Ruling and Order on Targa's Motion for Summary Judgment that Appellee's refusal to dilute the sewage samples was the protected activity under LEWS.[193] The District Court does not even mention Appellee's refusal to dilute the sewage samples was the "but-for" cause of his termination. Instead, the District Court only discusses Mr. Berthelot's asking Appellee to dilute the sewage samples, which is not a protected activity under LEWS. As a result, the District Court was clearly erroneous in concluding that Appellee's alleged protected activity was the "but-for" cause of his termination.

---

[192] 9C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2579, at 328 (3d ed.2008) (*citing*, inter alia, *Golf City, Inc. v. Wilson Sporting Goods, Co.*, 555 F.2d 426, 433–34 (5th Cir.1977)).

[193] ROA.5099.

## CONCLUSION

Appellant Targa Resources LLC respectfully requests that the Court reverse and render the District Court's Final Judgment with respect to each issue appealed, assess all costs against Appellee Kirk Menard, and for such other and further relief to which Appellant Targa Resources LLC is entitled.

Respectfully submitted,

By: _/s/ Daniel Patton_
    Daniel Patton
    Federal Bar No. 26200
    _dpatton@scottpattonlaw.com_
    SCOTT PATTON PC
    5301 Katy Freeway, Suite 201
    Houston, Texas 77007
    Phone:   (281) 377-3311
    Fax:     (281) 377-3267

**CERTIFICATE OF SERVICE**

I certify that on July 14, 2022, the foregoing document was served, via the Court's

CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/, upon the following

registered CM/ECF users:

Eulis Simien, Jr.
eulissimien@simien.com
Roy Bergeron
roybergeron@simien.com
SIMIEN & SIMIEN, LLC
7908 Wrenwood Boulevard
Baton Rouge, Louisiana 70809

*Attorneys for Appellee*

*/s/ Daniel Patton*
Daniel Patton

**CERTIFICATE OF COMPLIANCE**

With Type-Volume Limitation, Typeface Requirements,
and Type Style Requirements

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,637 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows, version 10, in Garamond font 14-point type face.

*/s/ Daniel Patton*
Daniel Patton