No. 22-30178

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

KIRK MENARD,

Plaintiff-Appellee

*v.*

TARGA RESOURCES LLC,

Defendant-Appellant

On Appeal from the United States District Court for the Middle District of Louisiana
No. 3:19-cv-00050-BAJ-SDJ, Hon. Brian A. Jackson, Judge Presiding

## REPLY BRIEF OF APPELLANT
## TARGA RESOURCES LLC

SUBMITTED BY:

DANIEL PATTON
Federal Bar No. 26200
dpatton@scottpattonlaw.com
SCOTT PATTON PC
5301 Katy Freeway, Suite 201
Houston, Texas 77007
Telephone:   (281) 377-3266
Facsimile:    (281) 377-3267

ATTORNEY FOR APPELLANT
TARGA RESOURCES LLC

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................1

TABLE OF AUTHORITIES ...........................................................................2

ARGUMENT & AUTHORITIES ....................................................................3

    A.   The District Court Erred When It Determined Appellee's *Refusal* To Participate In Diluting The Sewage Samples Was A Protected Activity Under LEWS....................................................................................3

    B.   The District Court Did Not Err When It Determined Appellee's *Reporting* Of Mr. Berthelot's Alleged Request To Dilute The Sewage Samples Was Not A Protected Activity Under LEWS......................................9

    C.   The District Court Was Clearly Erroneous In Concluding That Appellee's Alleged Protected Activity Was The But-For Cause Of His Termination........................................................................................... 11

CONCLUSION ............................................................................................. 21

CERTIFICATE OF SERVICE....................................................................... 22

CERTIFICATE OF COMPLIANCE.............................................................. 23

# TABLE OF AUTHORITIES

Cases

*Canada v. Tex. Mut. Ins. Co.*, 766 F. App'x 74, 81 (5th Cir. 2019) ..................................... 11

*Cheramie v. J. Wayne Plaisance, Inc.,* 595 So. 2d 619, 623 (La. 1992) ..................................... 3

*Dejoie v. Medley,* 08–2223, P. 6 (La.5/5/09), 9 So. 3d 826, 829. .......................................... 4

*Dennis v. Academy Ltd.*, 787 F. App'x 250, 252 n.8 (5th Cir. 2019) .................................... 11

*Derbonne v. State Police Comm'n*, 2019-1455 (La. App. 1 Cir. 10/14/20); 314 So. 3d 8619, 10

*English v. Wood Group PSN, Inc.*, No. 15-568, 2015 WL 5061164, at *14 (E.D. La. Aug. 25, 2015) ............................................................................................................... 9, 10

*Foti v. Holliday,* 09–0093, p. 6 (La.10/30/09), 27 So. 3d 813, 817 ..................................... 4

*Gen. Elec. Capital Corp. v. Se. Health Care, Inc.,* 950 F.2d 944, 950 (5th Cir. 1991) ........... 4

*Gorman v. Verizon Wireless Texas, L.L.C.,* 753 F.3d 165, 171 (5th Cir. 2014) ........... 13, 14

*Hays v. Louisiana State Bd. of Elementary & Secondary Educ.*, 2009-1386, p. 8 (La.App. 1 Cir. 6/11/10); 39 So. 3d 818, 823, *writ denied,* 2010-1640 (La. 10/8/10); 46 So. 3d 1272.4

*M.J. Farms, Ltd. v. Exxon Mobil Corp.,* 07–2371, p. 13 (La.7/1/08), 998 So.2d 16, 274, 5

*Matthews v. Military Dept. ex rel. State*, 2007-1337 (La. App. 1 Cir. 9/24/07); 970 So. 2d 1089, 1090 ............................................................................................................. 9, 10

*Peters v. Harrah's New Orleans*, 418 F.Supp.2d 843 (E.D. La. 2006) ................................ 15

*Roberson v. Alltel Information Services*, 373 F.3d 647, 653 (5th Cir. 2004) .......................... 11

*Stone v. Entergy Servs., Inc.*, 2008-0651 (La. App. 4 Cir. 2/4/09); 9 So. 3d 193, 200 .. 9, 10

*Tingle v. Merchants & Marine Bank*, 814 F. App'x 848, 851 (5th Cir. 2020) ..................... 11

*Zamora v. City of Houston*, 798 F.3d 326 (5th Cir. 2015) ..................................................... 11


Statutes

La. Civ. Code art. 9–13 ........................................................................................................... 4

La. R.S. 30:2027 ............................................................................................................ passim

## ARGUMENT & AUTHORITIES

**A.** **THE DISTRICT COURT ERRED WHEN IT DETERMINED APPELLEE'S** *REFUSAL* **TO PARTICIPATE IN DILUTING THE SEWAGE SAMPLES WAS A PROTECTED ACTIVITY UNDER LEWS**

Appellee incorrectly relies upon a 1992 Louisiana Supreme Court case, *Cheramie v. J. Wayne Plaisance, Inc.*,[1] to support his argument that refusing to participate in diluting the sewage samples is a protected activity under LEWS. In addition, Appellee argues that his refusal to dilute a sample is a "disclosure" under the current version of LEWS, and thus, a protected activity.

Importantly, the Louisiana Supreme Court in *Cheramie* did not analyze the current version of LEWS. The Court in *Cheramie* analyzed a pre-1991 version of LEWS which prohibited employers from retaliating against "an employee, acting in good faith, who reports or complains about possible environmental violations."[2] As a result, this Court should not consider *Cheramie* in determining whether the District Court erred when it determined Appellee's alleged refusal to participate in diluting the sewage samples was a protected activity under LEWS.

Federal courts sitting in diversity "are bound to dispatch [their] duty of legal interpretation as would a court of Louisiana, relying primarily on Louisiana's Revised Civil Code of 1870 (the Code) and other statutory law, including the rules of

---

[1] *Cheramie v. J. Wayne Plaisance, Inc.*, 595 So. 2d 619, 623 (La. 1992).

[2] *Cheramie*, 595 So. 2d at 623 (emphasis added) (quoting La. R.S. 30:2027 prior to its 1991 amendment).

interpretation contained therein."[3] Louisiana's rules of statutory interpretation are well settled and codified in part under the Louisiana Civil Code.[4]

The paramount consideration in statutory construction is the ascertainment of legislative intent and the reason or reasons which prompted the legislature to enact the law.[5] The starting point for the interpretation of any statute is the language of the statute itself.[6] Where the statute's text is clear and unambiguous and its application does not lead to absurd consequences, the provision is applied as written with no further interpretation made in search of the Legislature's intent.[7] In the event the language of a statute's text is susceptible of different meanings, a court's interpretation must best conform to the purpose of the law.[8]

When analyzing legislative history, it is presumed the legislature's actions in crafting a law were knowing and intentional.[9] More particularly, the legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject.[10] Thus, legislative language will be interpreted with the

---

[3] *Gen. Elec. Capital Corp. v. Se. Health Care, Inc.*, 950 F.2d 944, 950 (5th Cir. 1991).

[4] La. Civ. Code art. 9–13.

[5] *Foti v. Holliday,* 09–0093, p. 6 (La.10/30/09), 27 So. 3d 813, 817; *M.J. Farms, Ltd. v. Exxon Mobil Corp.,* 07–2371, p. 13 (La.7/1/08), 998 So.2d 16, 27.

[6] *Foti,* 09–0093 at p. 6, 27 So. 3d at 817; *Dejoie v. Medley,* 08–2223, P. 6 (La.5/5/09), 9 So. 3d 826, 829.

[7] La. Civ. Code art. 9; *Foti,* 09–0093 at p. 6, 27 So. 3d at 817; LSA–C.C. art. 9; LSA–R.S. 1:4.

[8] La. Civ. Code art. 10;

[9] *Foti,* 09–0093 at p. 6, 27 So.3d at 817; *M.J. Farms, Ltd.,* 07–2371 at pp. 13–14, 998 So.2d at 27.

[10] *Hays v. Louisiana State Bd. of Elementary & Secondary Educ.*, 2009-1386, p. 8 (La. App. 1 Cir. 6/11/10); 39 So. 3d 818, 823, *writ denied,* 2010-1640 (La. 10/8/10); 46 So. 3d 1272.

assumption that the legislature was aware of existing statutes, well established principles of statutory construction, and with knowledge of the effect of their acts and a purpose in view.[11]

The current version of LEWS provides:

A. No firm, business, private or public corporation, partnership, individual employer, or federal, state, or local governmental agency shall act in a retaliatory manner against an employee, acting in good faith, who does any of the following:

(1) **Discloses, or threatens to disclose, to a supervisor or to a public body** an activity, policy, practice of the employer, or another employer with whom there is a business relationship, that the employee reasonably believes is in violation of an environmental law, rule, or regulation.[12]

Appellee devotes a sizable portion of his response brief arguing the word "disclose" also means "refusal."[13]  Appellee even sets out a definition of "disclose."[14] "Disclose" means "to make something known."[15]  In this case, Appellee did allegedly make something known.  He reported to his Supervisor, David Smith ("Mr. Smith") that Perry Berthelot ("Mr. Berthelot") asked him to dilute the sewage samples.  This report would be considered a disclosure under the current version of LEWS.  But, the District Court properly concluded that Appellee's alleged report did not constitute a

---

[11] *M.J. Farms, Ltd.,* 07–2371 at pp. 13–14, 998 So.2d at 27 (emphasis added).

[12] *See* La. R.S. 30:2027(A)(1 (emphasis added).

[13] *See* Appellee's Brief at Pages 23-28.

[14] *See* Appellee's Brief at Page 25.

[15] *See* Appellee's Brief at Page 25.

protected activity under LEWS because LEWS does not afford protection to an employee who generates reports regarding environmental issues when reporting environmental issues, concerns, and potential violations is a part of one's normal job responsibilities, and part and parcel of what one is hired and/or required to do.[16]

Now, Appellee is before this Court asking it to rewrite a clear and unambiguous statute to conclude Appellee's alleged refusal to dilute the sewage samples was a "disclosure" under LEWS. Refusal means to express oneself as unwilling to accept.[17] A refusal is simply an unwillingness to do something, it is not a disclosure. Had the Louisiana legislature meant to make a refusal to participate in illegal and environmentally damaging conduct a protected activity under LEWS, it would have included the specific language in the statute as they did in the Louisiana Whistleblower Statute, La. R.S. 23:967, however, the legislature did not do this. The Louisiana Whistleblower Statute provides in pertinent part:

> A.   An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> > (1)   Discloses or threatens to disclose a workplace act or practice that is in violation of state law.

---

[16]   ROA.5099. ("[T]he Court concludes that Appellee's reporting of Berthelot's request did not constitute a protected activity because it was part of his normal job responsibilities.").

[17]   *See, e.g.,* Merriam-Webster.com Dictionary, "Refuse," https://www.merriam-webster.com/dictionary/refuse (accessed September 3, 2022) ("to express oneself as unwilling to accept").

(2)    Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.

**(3)    Objects to or refuses to participate in an employment act or practice that is in violation of law.**[18]

However, the Louisiana legislature did not include this type of language in the amendment to LEWS.  Based on the foregoing, the District Court erred when it determined Appellee's alleged refusal to participate in diluting the sewage sample was a protected activity under LEWS.

Assuming *arguendo* this Court concludes that Appellee's alleged refusal to dilute the sewage samples was a "disclosure" under LEWS, Appellee's claim still fails as a matter of law because Appellee did not make this "disclosure" to his supervisor or an authoritative body as required by LEWS.

The current iteration of LEWS protects employees who "disclose[] or threaten[] to disclose" certain violations to a supervisor or authoritative body.[19]  As noted in Targa's opening brief, Appellee never told his supervisor about his alleged refusal to dilute the sewage samples and did not make a report to an authoritative body until two months *after* his termination in a complaint drafted by his attorneys to the Louisiana Department of Environmental Quality.[20]  The undisputed facts in this case are as

---

[18]  *See* La. R.S. 23:967.

[19]  *See* La. R.S. 30:2027(A).

[20]  ROA.6379-6380 [Pg. 290, Line 2 to Pg. 291, Line 11]; 6550-6551 [Pg. 107, Line 11 to Pg. 108, Line 3]; 6554-6555 [Pg. 111, Line 25 to Pg. 112, Line 12]; and 6555 [Pg. 112, Lines 16-21].

follows:

(1)   The only person who was aware of Appellee's alleged protected activity (i.e., refusal to dilute the sewage samples) was Mr. Berthelot.[21]

(2)   Mr. Smith was Appellee's Supervisor.[22]

(3)   Mr. Berthelot was Ted Keller's ("Mr. Keller") Supervisor.[23]

(4)   Mr. Berthelot was in Operations, not ES&H.[24]

(5)   Mr. Berthelot was not in Appellee's chain of command or within the operations division.[25]

(6)   Appellee did not make a report to an authoritative body until two months *after* his termination in a complaint drafted by his attorneys to the Louisiana Department of Environmental Quality.[26]

So, if this Court determines that Appellee's alleged refusal is a protected activity under LEWS, Appellee's claim still fails as a matter of law because Appellee did not make this alleged disclosure to his supervisor or an authoritative body. As a result, this Court should reverse and render the Final Judgment of the District Court because Appellee did not demonstrate in his response to summary judgment that he engaged in a protected activity under LEWS.

---

[21] ROA.6557 [Pg. 114, Lines 11-13]; 6558 [Pg. 115, Lines 1-4]; 6228 [Pg. 139, Lines 18-21]; 6228-6229 [Pg. 139, Line 25 to Pg. 140, Line 2]; 6380 [Pg. 291, Lines 12-21]; 6587 [Pg. 144, Lines 9-15]; 6379-6380 [Pg. 290, Line 2 to Pg. 291, Line 11]; and 6550-6551 [Pg. 107, Line 11 to Pg. 108, Line 3].

[22] ROA.6112 and 6457.

[23] ROA.6121.

[24] ROA.6590, 6603, and 6604.

[25] *See* Appellee's Brief at Pages 45-46.

[26] ROA.6379-6380 [Pg. 290, Line 2 to Pg. 291, Line 11]; 6550-6551 [Pg. 107, Line 11 to Pg. 108, Line 3]; 6554-6555 [Pg. 111, Line 25 to Pg. 112, Line 12]; and 6555 [Pg. 112, Lines 16-21].

**B.    THE DISTRICT COURT DID NOT ERR WHEN IT DETERMINED APPELLEE'S *REPORTING* OF MR. BERTHELOT'S ALLEGED REQUEST TO DILUTE THE SEWAGE SAMPLES WAS NOT A PROTECTED ACTIVITY UNDER LEWS**

In his Brief, Appellee argues that the District Court erred in its Ruling and Order regarding Targa's Motion for Summary Judgment, when the District Court concluded that Appellee's *reporting* of Mr. Berthelot's alleged request to dilute the sewage samples did *not* constitute a protected activity under LEWS.[27]   In support of his argument, Appellee relies solely on *Derbonne v. State Police Commission*.[28]   However, *Derbonne* did not address LEWS, but rather with Louisiana's employment whistleblower statute (La. R.S. 23:967).

While LEWS generally protects an employee from retaliation,[29] it "does not afford protection to an employee who generates reports regarding environmental issues when reporting environmental issues, concerns, and potential violations is a part of one's normal job responsibilities, and part and parcel of what one is hired and/or required to do."[30]   Several Louisiana state courts, including the same appellate court that decided *Derbonne*, have come to this same conclusion.   For example:

---

[27]   ROA.5099. ("[T]he Court concludes that Appellee's reporting of Berthelot's request did not constitute a protected activity because it was part of his normal job responsibilities.").

[28]   *Derbonne v. State Police Comm'n*, 2019-1455 (La. App. 1 Cir. 10/14/20); 314 So. 3d 861.

[29]   *See* La. R.S. 30:2027(A).

[30]   *Stone v. Entergy Servs., Inc.*, 2008-0651 (La. App. 4 Cir. 2/4/09); 9 So. 3d 193, 200; *see also Matthews v. Military Dept. ex rel. State*, 2007-1337 (La. App. 1 Cir. 9/24/07); 970 So. 2d 1089, 1090; *English v. Wood Group PSN, Inc.*, No. 15-568, 2015 WL 5061164, at *14 (E.D. La. Aug. 25, 2015).

The court in *Stone v. Entergy Servs., Inc.* held that "the Louisiana Environmental Whistleblower Statute does not afford protection to an employee who generates reports regarding environmental issues when reporting environmental issues, concerns, and potential violations is a part of one's normal job responsibilities, and part and parcel of what one is hired and/or required to do."[31]

**Similarly, the court in *Matthews v. Military Dept. ex rel. State*, held that "We also find that plaintiff is afforded no protection under La. R.S. 23:967 or 30:2027 [Louisiana Environmental Whistleblower Statute] for his reports relative to the State's potential liability for acquisition of the Gillis Long Hansen Disease Center insofar as the reports were required as part of his normal duties."[32]**

The court in *English v. Wood Group PSN, Inc.*, held that "while the Louisiana Supreme Court has not ruled on this point, current appellate court precedent holds that a plaintiff cannot recover under this provision where the reporting activity giving rise to the whistleblower claim was part of the plaintiff's normal job responsibilities."[33]

It is worth noting that the Louisiana Court of Appeals, First District did not overrule its own holding in the *Matthews* case when it decided the *Derbonne* case.

The testimony and evidence adduced at trial, including Appellee's testimony, established that it was part of Appellee's job responsibilities as an ES&H Specialist at Targa to report potential environmental violations or concerns to his supervisor.[34]

Relying upon the well-settled legal authority in the *Stone*, *Matthews*, and *English* cases, the District Court did not err in its Ruling and Order, when the District Court

---

[31] *Stone*, 9 So. 3d at 200.

[32] *Matthews*, 970 So. 2d at 1090.

[33] *English*, 2015 WL 5061164, at *14.

[34] ROA.5098-5099.

concluded that Appellee's *reporting* of Mr. Berthelot's alleged request to dilute the sewage samples did *not* constitute a protected activity under LEWS.[35]

## C.    THE DISTRICT COURT WAS CLEARLY ERRONEOUS IN CONCLUDING THAT APPELLEE'S ALLEGED PROTECTED ACTIVITY WAS THE BUT-FOR CAUSE OF HIS TERMINATION

*(1)    Cat's Paw Theory*

In his Brief, Appellee seems to argue that the cat's paw theory standard outlined in *Roberson v. Alltel Information Services*,[36] is no longer good law and Targa cannot rely on it because *Zamora v. City of Houston*,[37] was decided after *Roberson*.[38]  Not only did *Zamora* not overrule *Roberson*, the standard set forth in *Roberson* has been cited with approval by this Court in several cases since *Zamora*.[39]

Recently, in *Dennis v. Academy Ltd.*, this Court noted to prevail on a "cat's paw theory," a plaintiff must submit evidence sufficient to establish two conditions:

(1)    that a co-worker exhibited retaliatory animus, and

(2)    that the same co-worker possessed leverage, or exerted influence, over the titular decisionmaker.[40]

---

[35]   ROA.5099. ("[T]he Court concludes that Appellee's reporting of Berthelot's request did not constitute a protected activity because it was part of his normal job responsibilities.").

[36]   373 F.3d 647 (5th Cir. 2004).

[37]   *Zamora v. City of Houston*, 798 F.3d 326 (5th Cir. 2015).

[38]   *See* Appellee's Brief at Pages 41-42.

[39]   *Tingle v. Merchants & Marine Bank*, 814 F. App'x 848, 851 (5th Cir. 2020); *Dennis v. Academy Ltd.*, 787 F. App'x 250, 252 n.8 (5th Cir. 2019); *Canada v. Tex. Mut. Ins. Co.*, 766 F. App'x 74, 81 (5th Cir. 2019).

[40]   *Dennis,* 787 F. App'x at 252 n.8 (5th Cir. 2019).

In this case, there is no evidence to demonstrate that Mr. Berthelot (the alleged person with retaliatory animus) possessed leverage, or exerted influence over Jessica Keiser ("Ms. Keiser") (the titular decisionmaker). It is undisputed in this case that Mr. Berthelot was the *only* co-worker who could have had a retaliatory animus against Appellee because he was the *only* co-worker who was allegedly aware of Appellee engaging in a protected activity (i.e., refusal to dilute the sewage samples).[41] In addition, it is undisputed that no one possessed leverage, or exerted influence over the final decisionmaker—Ms. Keiser.[42] In fact, Ms. Keiser testified that she independently considered the information that Targa's Human Resources representatives presented to her before making the decision to terminate Appellee and that she did not treat Appellee's termination as a rubber stamp situation.[43]

Because there is no evidence that Ms. Keiser was aware of Appellee's alleged protected activity and there is no evidence that Mr. Berthelot possessed leverage, or exerted influence over Ms. Keiser, the District Court was clearly erroneous in concluding that Appellee's alleged protected activity was the "but-for" cause of his termination. As a result, the Final Judgment in this case should be reversed and rendered.

---

[41] ROA.6557 [Pg. 114, Lines 11-13]; 6558 [Pg. 115, Lines 1-4]; 6228 [Pg. 139, Lines 18-21]; 6228-6229 [Pg. 139, Line 25 to Pg. 140, Line 2]; 6380 [Pg. 291, Lines 12-21]; 6587 [Pg. 144, Lines 9-15]; 6379-6380 [Pg. 290, Line 2 to Pg. 291, Line 11]; and 6550-6551 [Pg. 107, Line 11 to Pg. 108, Line 3].

[42] ROA.6706-6707 [Pg. 263, Line 23 to Pg. 264, Line 2].

[43] ROA.6704-6705 [Pg. 261, Line 19 to Pg. 262, Line 3]; and 6705 [Pg. 262, Lines 2-3].

(2)     *Appellee's Misplaced Reliance On Gorman v. Verizon Wireless Texas, L.L.C.*

In his Brief, Appellee relies on *Gorman v. Verizon Wireless Texas, L.L.C.*,[44] for the proposition that there are multiple ways that a person with retaliatory animus can supply causation under the cat's paw theory. The example cited by Appellee focuses on "when a co-worker makes a recommendation to terminate and the decisionmaker is merely a rubber stamp on that co-worker's decision."[45]

Appellee argues that (a) Mr. Keller was the individual who championed the accusations against Appellee; (b) Mr. Keller was the one who failed to conduct a proper investigation into the accusations; and (c) Mr. Keller was the one who recommended Appellee for termination. As a result, Appellee argues, Mr. Keller was the co-worker who allegedly recommended Appellee's termination that Ms. Keiser merely rubber stamped.

First, *Gorman* does not apply because Ms. Keiser testified that she independently considered the information Targa's Human Resources representatives presented to her before making the decision to terminate Appellee and that she did *not* treat Appellee's termination as a rubber stamp situation.[46] Second, *Gorman* does not apply because it is undisputed that Mr. Keller was never aware of Appellee's alleged protected activity, and

---

[44] *Gorman v. Verizon Wireless Texas, L.L.C.,* 753 F.3d 165, 171 (5th Cir. 2014).

[45] *Gornman*, 753 F.3d. at 171 (citing *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998).

[46] ROA.6704-6705 [Pg. 261, Line 19 to Pg. 262, Line 3]; and 6705 [Pg. 262, Lines 2-3].

therefore, could not have the requisite retaliatory animus.[47]  Based on the foregoing, Appellee's reliance on *Gorman* is misplaced.

   (3)    *The District Court's Magical Imputing or Transferring Of A Supervisor's Retaliatory Animus To His Subordinate*

In support of his theory of cat's paw liability, Appellee argues that Mr. Berthelot used Mr. Keller to orchestrate Appellee's termination.  **Mr. Keller was neither the final decisionmaker nor a co-worker who had any retaliatory animus toward Appellee.**[48]  **In addition, Mr. Keller was the one who received a report from a Targa employee and independent contractor about Appellee's inappropriate conduct.**[49]  At trial, no evidence was presented that would actually impute or transfer Mr. Berthelot's alleged retaliatory animus to Mr. Keller.  However, it appears that the District Court relied upon three pieces of evidence in an effort to impute or transfer Mr. Berthelot's alleged retaliatory animus to Mr. Keller:

   (1)    Mr. Berthelot was Mr. Keller's direct supervisor;

   (2)    Around October 9th, four days after the protected activity, Mr. Keller spoke to Mr. Berthelot about his plans to report Appellee to HR, even though Appellee was not in Mr. Berthelot's chain of

---

[47]  ROA.6557 [Pg. 114, Lines 11-13]; 6558 [Pg. 115, Lines 1-4]; 6228 [Pg. 139, Lines 18-21]; 6228-6229 [Pg. 139, Line 25 to Pg. 140, Line 2]; 6380 [Pg. 291, Lines 12-21]; 6587 [Pg. 144, Lines 9-15]; 6379-6380 [Pg. 290, Line 2 to Pg. 291, Line 11]; and 6550-6551 [Pg. 107, Line 11 to Pg. 108, Line 3].

[48]  ROA.6557 [Pg. 114, Lines 11-13]; 6558 [Pg. 115, Lines 1-4]; 6224-6225 [Pg. 135, Line 24 to Pg. 136, Line 5]; 6329 [Pg. 240, Lines 1-4]; 6669-6670 [Pg. 226, Line 19 to Pg. 227, Line 2]; 6700 [Pg. 257, Lines 21-23]; 6703 [Pg. 260, Lines 10-14]; and 6706 [Pg. 263, Lines 18-22]; and 5102.

[49]  ROA.6147 [Pg. 58, Lines 13-17]; 6216-6218 [Pg. 127, Line 23 to Pg. 129, Line 13]; and 6636 [Pg. 193, Lines 12-16]; ROA.6127 [Pg. 58, Lines 13-17]; and 6216-6218 [Pg. 127, Line 23 to Pg. 129, Line 13].

command; and

(3)     Mr. Keller testified that he had "plenty of time" to speak to Mr. Berthelot between October 5th and 9th—the time between the protected activity and Mr. Keller's report to HR—about the actions that would be taken as a result of Mr. Berthelot and Appellee's conversation regarding diluting samples.[50]

First, simply because Mr. Keller reported to Mr. Berthelot is not enough to impute Mr. Berthelot's alleged retaliatory animus to Mr. Keller.[51]  Second, on October 9th, Mr. Keller had already decided to report Appellee to Human Resources based on complaints he received.  And finally, the mere fact that two co-workers have the ability to talk over a certain period of time is not enough to impute a retaliatory animus from one person to another.  **It is important to note that Appellee did not cite to a single case where a supervisor's retaliatory animus was imputed or transferred to his subordinate who had no retaliatory animus.**  If this Court were to accept the District Court's application of the cat's paw theory, a plaintiff could impute or transfer retaliatory animus to any person in a supervisor's chain of command who simply had the ability to speak to that supervisor between the alleged protected activity and the plaintiff's termination.  This application of the cat's paw theory fails to take into account whether any of the people in the supervisor's chain of command actually had a

---

[50]  ROA.5995-5996 [¶ i(i), (iv), and (v)].

[51]  *See, e.g., Peters v. Harrah's New Orleans*, 418 F.Supp.2d 843 (E.D. La. 2006) (finding the plaintiff failed to raise a genuine issue of material fact on alleged wrongdoer's knowledge simply because he reported to an individual who was aware of the plaintiff's protected conduct).

retaliatory animus against the plaintiff, and thus is too broad of an application.

### (4)     *The Chain Of Causation Was Broken From The Very Beginning*

In his Brief, Appellee argues that the chain of causation was unbroken from Mr. Keller to Ms. Keiser.[52]   However, the chain of causation was broken from the very beginning because, as correctly pointed out by Appellee, Mr. Berthelot was never involved in the chain.   The one person who had the alleged retaliatory animus against Appellee was never involved in the decision to terminate Appellee.   Moreover, the chain did not even start with Mr. Keller.   The chain started when Mr. Keller received a report from a Targa employee and an independent contractor about Appellee's inappropriate conduct.[53]   There is no evidence that either the Targa employee or the independent contractor had any retaliatory animus against Appellee.   The only way Appellee and the District Court's theory of an unbroken chain of causation stays intact is to magically impute or transfer Mr. Berthelot's alleged retaliatory animus to Mr. Keller.   As a result, the District Court was clearly erroneous in concluding Appellee's alleged protected activity was the "but-for" cause of his termination and the Final Judgment in this case should be reversed and rendered.

---

[52]   *See* Appellee's Brief at Pages 44-53.

[53]   ROA.6147 [Pg. 58, Lines 13-17]; 6216-6218 [Pg. 127, Line 23 to Pg. 129, Line 13]; and 6636 [Pg. 193, Lines 12-16]; ROA.6127 [Pg. 58, Lines 13-17]; and 6216-6218 [Pg. 127, Line 23 to Pg. 129, Line 13].

(5)    *Everyone Involved In The Decision To Terminate Appellee Had Good Faith Belief In The Complaint About Appellee*

In employment lawsuits where an employer decides to terminate an employee based on his violation of a particular rule or policy, or where the employer receives complaints about a particular employee's conduct or behavior from co-workers, **"the validity of the initial complaint is not the central issue because the ultimate falseness of the complaint proves nothing as to the employer, only as to the complaining employee."**[54] **"Thus, the inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief."**[55]

In his Brief, Appellee does not really challenge this legal proposition other than to say it does not apply to the cat's paw theory of liability. Also conspicuously absent from Appellee's Brief is any mention of the fact that the *initial* complaint about Appellee's inappropriate conduct came from a Targa employee and an independent

---

[54] *Willis v. Cleco Corp.*, No. 09-2103, 2011 WL 4443312, at *12 (W.D. La. Sept. 22, 2011) (quoting *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165 (5th Cir. 1993)) (emphasis added) (internal quotation omitted)); *see Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 Fed. Appx. 917, 924 (5th Cir. 2009); *see also Strahan v. Waste Mgmt.*, CV H-10-2441, 2011 WL 13124110, at *5 (S.D. Tex. Dec. 27, 2011) ("When an employee is discharged for failing to comply with a work rule, the issue is whether the employer reasonably and in good faith believed that the violation did occur."); *Bardwell v. GlobalSantaFe Drilling Co.*, CIV A H-06-0171, 2007 WL 2446801, at *11 (S.D. Tex. Aug. 23, 2007) ("When an employee is discharged for failing to comply with a work rule, the issue is whether the employer reasonably and in good faith believed that the violation occurred."); *McCombs v. MS Communications Am., Inc.*, CIV.A.SA00CA0623NN, 2002 WL 1491724, at *7 (W.D. Tex. Apr. 23, 2002) ("The critical issue in those cases, as in this case, is whether the defendants believed in good faith that plaintiff had committed the offensive behavior and that plaintiff was terminated for that reason.").

[55] *Id.* (emphasis added).

contractor and rather than Mr. Keller, which is critical to this analysis.[56]

On October 9, 2018, a Targa employee reported to Mr. Keller that Appellee showed a picture of his wife's hemorrhoids to another Targa employee.[57] In addition, an independent contractor for Targa reported to Mr. Keller that Appellee made a comment about "hooking up" with his wife.[58] Mr. Keller had a reasonable, good faith belief in the employee's and the independent contractor's reports about Appellee showing a picture of his wife's hemorrhoids to a Targa employee and Appellee's making a comment about "hooking up" with one of Targa's independent contractor's wife.[59] At trial, Appellee testified that he knew as an employee of Targa, that he was required to follow Targa's Anti-Harassment Policy and understood that if he did not follow Targa's Anti-Harassment Policy he could be subject to disciplinary action, up to and including termination, even for a single offense.[60] Appellee agreed that if he were to show a picture of his wife's hemorrhoids to another employee, that would be a violation

---

[56] ROA.6147 [Pg. 58, Lines 13-17]; 6216-6218 [Pg. 127, Line 23 to Pg. 129, Line 13]; and 6636 [Pg. 193, Lines 12-16]; ROA.6127 [Pg. 58, Lines 13-17]; and 6216-6218 [Pg. 127, Line 23 to Pg. 129, Line 13].

[57] ROA.6147 [Pg. 58, Lines 13-17]; 6216-6218 [Pg. 127, Line 23 to Pg. 129, Line 13]; and 6636 [Pg. 193, Lines 12-16].

[58] ROA.6147-6148 [Pg. 58, Line 13 to Pg. 58, Line 4]; and 6216 – 6218 [Pg. 127, Line 23 to Pg. 129, Line 13].

[59] ROA.6218 [Pg. 129, Lines 14-21].

[60] ROA.6523 [Pg. 80, Lines 21-24]; 6523-6524 [Pg. 80, Line 25 to Pg. 81, Line 5]; 6524 [Pg. 81, Lines 6-9]; and 6657 [Pg. 214, Lines 8-10].

of Targa's Anti-Harassment Policy and he could be terminated.[61]

After learning about this information, Mr. Keller made a report to Mr. Smith, (Appellee's Supervisor) and then to Mr. Smith's Supervisor, Mr. Jarrod Gregg ("Mr. Gregg").[62] Mr. Smith and Mr. Gregg both had a good faith belief in Mr. Keller's report.[63]

On October 10, 2018, Mr. Keller reported to Tricia Dodson ("Ms. Dodson"), a representative in Targa's Human Resources Department, about Appellee showing a picture of his wife's hemorrhoids to a Targa employee and the inappropriate wife comments.[64] Ms. Dodson had a good faith belief in Mr. Keller's report.[65]

A representative from Targa's Human Resources Department went to Ms. Keiser to get her approval to terminate Appellee.[66] During this meeting, Targa's Human Resources representative told Ms. Keiser about Appellee's inappropriate conduct.[67] Ms. Keiser had a reasonable, good faith belief in Targa's Human Resources Department's report of Appellee's inappropriate conduct.[68] Based on the foregoing, everyone in the

---

[61] ROA.6530-6531 [Pg. 87, Line 25 to Pg. 88, Line 5]; and 6531 [Pg. 88, Lines 10-12].

[62] ROA.6216-6218 [Pg. 127, Line 23 to Pg. 129, Line 13]; and 3692-3693 [Pg. 68, Line 11 to Pg. 69, Line 11].

[63] ROA.6297 [Pg. 208, Lines 14-18]; 6298 [Pg. 209, Lines 1-15]; and 6329 [Pg. 240, Lines 8-10]; 3693 [Pg. 69, Lines 12-19]; 3698 [Pg. 74, Lines 1-19]; and 3699 [Pg. 75, Lines 1-10].

[64] ROA.6220-6221 [Pg. 131, Line 20 to Pg. 132, Line 8].

[65] ROA.6667 [Pg. 224, Lines 12-19].

[66] ROA.6703 [Pg. 260, Lines 15-22].

[67] ROA.6730 [Pg. 260, Lines 15-22].

[68] ROA.6703-6704 [Pg. 260, Line 15 to Pg. 261, Line 18].

decision to terminate Appellee had a good faith belief in the complaint made by the Targa employee and the independent contractor.  As a result, the District Court was clearly erroneous in concluding Appellee's alleged protected activity was the "but-for" cause of his termination and the Final Judgment in this case should be reversed and rendered.

**CONCLUSION**

Appellant Targa Resources LLC respectfully requests that the Court: (a) reverse the District Court's Final Judgment with respect to each issue appealed; (b) render a take nothing judgment against Appellee Kirk Menard and in Appellant Targa Resources LLC's favor; (c) assess all costs against Appellee Kirk Menard; and (d) for such other and further relief to which Appellant Targa Resources LLC is entitled.

Respectfully submitted,

By: */s/ Daniel Patton*
    Daniel Patton
    Federal Bar No. 26200
    *dpatton@scottpattonlaw.com*
    SCOTT PATTON PC
    5301 Katy Freeway, Suite 201
    Houston, Texas 77007
    Phone:   (281) 377-3311
    Fax:      (281) 377-3267

**CERTIFICATE OF SERVICE**

I certify that on September 6, 2022, the foregoing document was served, via the

Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/, upon the

following registered CM/ECF users:

Eulis Simien, Jr.
eulissimien@simien.com
Roy Bergeron
roybergeron@simien.com
SIMIEN & SIMIEN, LLC
7908 Wrenwood Boulevard
Baton Rouge, Louisiana 70809

*Attorneys for Appellee*

/s/ Daniel Patton
Daniel Patton

**CERTIFICATE OF COMPLIANCE**

With Type-Volume Limitation, Typeface Requirements,
and Type Style Requirements

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,098 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows, version 10, in Garamond font 14-point type face.


*/s/ Daniel Patton*
Daniel Patton